### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT ATLANTA,

## AUGUST TERM, 1856.

Present—JOSEPH H. LUMPKIN, ⎱
HENRY L. BENNING, ⎰ *Judges.*
*CHAS. J. McDONALD.

---

No. 96.—W. R. MURPHEY, plaintiff in error, *vs.* A. MUR-PHEY, administrator, &c. defendant in error.

[1.] A will had in it these words: "It is my will and desire that the whole of my estate, both real and personal, shall remain in the possession of my beloved wife, Elizabeth Horn, during her life or widowhood, and for her to have the free use and occupation thereof, together with the profits arising therefrom": *Held,* that the effect of the words was, to give to Elizabeth Horn, for her life or widowhood, the *use* of the whole estate, and also to give her the profits of the whole estate.

[2.] *Held,* further, that the effect of the words was, not to give her all of the matured crop on hand at the time of her death, less the expenses of the year, but only all of the crop less those expenses, and *less a support for the negroes and stock, &c.* until a new crop could be made.

[3.] And *held,* still further, that the words "profits arising therefrom," meant profits to arise *after* the testator's death.

---

*Judge McDonald was compelled, by indisposition, to leave the Court before its adjournment.—REPORTER.

In Equity, in Monroe Superior Court. Tried before Judge GREEN, February Term, 1856.

The bill was filed by the defendant in error against the plaintiff in error for account and settlement under the following facts:

John Horn died in February, 1840, having a short time previously made his last will and testament, by which he appointed the plaintiff in error his executor.

After making specific bequests of his land and negroes, he devised the whole of his estate to his wife during her life or widowhood, as follows:

7. "It is my will and desire that the whole of my estate, both real and personal, shall remain in the possession of my beloved wife, Elizabeth Horn, during her life or widowhood, and for her to have the free use and occupation thereof, together with the profits arising therefrom; and at her death or marriage, it is my desire that all my estate, not hereinbefore disposed of, be collected together, inventoried and appraised, and that my executor cause the same to be sold to the highest bidder, at public sale, and to the best advantage for cash. And it is further my desire, that my executor proceed to collect all my promissory notes, bonds and every kind of chose in action, and convert the whole into cash, and connect the same with the money raised from my estate as aforesaid, and make them one general fund; which I desire may be disposed of as directed in the following part of this, my last will and testament."

Upon the death of the testator, Elizabeth Horn, his widow, took possession of the whole of his estate and remained in possession until her death in 1842; a short time previous to which, she also made her last will and testament, by which she directed the whole of her estate, without specifying in what it consisted, to be divided into four equal parts and distributed among her four grand-children. Upon the death of John Horn, the plaintiff in error propounded his will for probate,

which was duly proven and admitted to record. He was qualified as executor of the will, and proceeded to have an inventory and appraisement of the estate of John Horn made, and took the management of the same as the agent of Elizabeth Horn, during her life.   Upon her death, he disposed of the estate of John Horn, together with the profits arising therefrom, during the time it was held by Elizabeth Horn, under the will of John Horn.

The defendant in error having obtained letters of administration, with the will annexed, of Elizabeth Horn, deceased, filed his bill against the plaintiff in error for an account and settlement, claiming the profits which accrued from the estate of John Horn from the time of his death until the death of his wife, as belonging to her estate.

The plaintiff in error answered the bill, denying that Elizabeth Horn had or owned any property at her death or at any other time, so far as he knew; that the profits arising from the estate while it was in her possession, belonged to the estate of John Horn, and were properly distributable under his will.   The answer stated the net amount of the profits during the three years the estate was held by Elizabeth Horn, and contained as an exhibit an exemplification of inventories and appraisements of the estate of John Horn immediately after his death and the death of his wife; by which exemplification it appeared that at the time of the death of the testator, he had on hand about 50.000 pounds of seed cotton. The exemplification also contained a return, made by the plaintiff in error as the executor of John Horn, in January, 1841, of the sale of ten bales of cotton, stated in the answer to be the crop of 1840, and also the sale of thirty-nine other bales of cotton.   The exemplification further contained the amount of the matured crop on hand at the death of Elizabeth Horn, consisting of corn, fodder, oats, wheat, bacon, lard, &c.

It was proven by the answer of John Kennedy to interrogatories, that two or three negroes were purchased by the plaintiff in error for Mrs. Horn after the death of her hus-

band and before her death, but he did not know at what price or with whose money.

Counsel for the plaintiff in error requested the Court to charge the Jury, that under the 7th item of the will of John Horn, Elizabeth Horn took only a life interest in the profits arising from the property while in her possession; and at the termination of her widowhood, the defendant was entitled to take possession of the whole and dispose of it as directed by the will of the testator; which charge, the Court refused to give, but charged the Jury that the will of John Horn conveyed the use and occupation of his estate to Mrs. Horn for and during her natural life or widowhood, and in the opinion of the Court, the testator, under the 7th item of his will, gave to his widow, absolutely, all the net proceeds arising from his estate during her life or widowhood.

The Jury returned a verdict for the complainant for $14.-994 99.

Counsel for defendant moved for a new trial on the following grounds:

1st. Because the Court erred in charging the Jury that Elizabeth Horn took an absolute interest in the profits of the estate of John Horn, under the will of John Horn.

2d. Because the Court erred in charging the Jury that the matured crop on hand at the death of Mrs. Horn, after paying expenses for that year out of it, was net proceeds, and belonged to Mrs. Horn's estate.

3d. Because the verdict of the Jury was contrary to the evidence.

Which motion was refused by the Court, and Counsel for the defendant excepted; and this decision is assigned for error.

CABANISS & PINCKARD, for plaintiff in error.

WHITTLE, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The Court, in a part of its charge to the Jury, said, "that. the will of John Horn conveyed the use and occupation of his estate to Mrs. Horn for and during her natural life or widowhood; and in the opinion of the Court, the testator, under the 7th item of his will, gave to his widow, absolutely, all the net proceeds arising from his estate during her life or widowhood."

Was this a correct view of the will? That is the first question.

We think it was. It expresses the grammatical import of the item to which it refers. In order to make that item mean that Mrs. Horn was to have no more than "the free use and occupation" of "the profits arising from" the estate, we have to supply, immediately before these last quoted words, the expression, "the free use and occupation of," so as to make this part of the item read thus: "It is my will and desire that the whole of my estate, both real and personal, shall remain in the possession of my beloved wife, Elizabeth Horn, during her life or widowhood, and for her to have the free use and occupation thereof, together with—*the free use and occupation of*—the profits arising therefrom."

But it is a general rule of interpretation, that we are not at liberty to supply words, if the sense does not require it— that we are not at liberty to imply a meaning, if a meaning is expressed.

The expressed sense of the item is, that Mrs. Horn is to have one thing together with another thing. She is to have the *use* of the whole estate; this is the one thing. She is to have the profits arising from the whole estate; this is the thing which she is to have, together with the use of the whole estate. These are the two things which she is to have. This is the sense which the item *expresses*.

And there is another reason or two going to show that this

was the sense intended. The word "occupation," is a word not well adapted to the word "profits." We say men use profits, enjoy profits; but we never say that men *occupy* profits.

This sense makes the will natural and reasonable—the other makes it unnatural, unreasonable. It is the dictate of nature and reason, that men, when they come to die, should leave their wives something more than a bare subsistence. That this old woman should have, during the little remnant of her life, the whole profits of the estate, would much more nearly accord with this dictate, than that she should have only the use of those profits would.

[1.] We agree, then, with the Court below thus far, in its interpretation of this item of the will.

But we do not agree with the Court in its further interpretation of this item. The Court further charged the Jury, "that the matured crop on hand at the death of Mrs. Horn, after paying expenses for that year out of it, was net proceeds, and belonged to Mrs. Horn's estate."

The testator's intention, as it seems to us, was, to keep up the body of his estate during the life or widowhood of Mrs. Horn, to give her during that time the use of the estate; and to give her, absolutely, whatever should proceed from the estate *over and above what should be required for keeping up the estate.* Such overplus would be all that could be "*profits.*"

If we are right in this, Mrs. Horn was entitled to no more, as to the crop on hand at the time of her death, than she had been entitled to as to any other crop; and as to any other crop, she had been entitled only to what remained of it after there was set apart enough of it to keep up the body of the estate; that is, enough of it to support the property until the time when the next year's crop should be mature.

The next and only remaining point is, whether the verdict was contrary to the evidence.

And the verdict is, we think, larger than the evidence authorized it to be.

Murphey *vs.* Murphey, adm'r.

The Jury must have allowed the complainant some things to which he was not entitled. What these were, we cannot certainly know, as the verdict is a general one.

We, therefore, can only mention some things, which, if the Jury allow them to him, they allowed to him improperly.

[3.] Thirty-nine of the bales of cotton specified in William Murphey's return, made to the Court of Ordinary for 1841 were, it is to be presumed from the evidence as it stands before us, the proceeds of the fifty thousand pounds of seed cotton mentioned in the inventory of John Horn's estate; that is, were the proceeds of cotton not raised by Mrs. Horn after Mr. Horn's death, but of cotton left by Mr. Horn at his death. These, if profits, were profits *arisen* to the testator at the testator's death—not profits "*arising*" to his legatee after his death.

If these thirty-nine bales were the proceeds of such seed cotton, the Jury should not have allowed the complainant any thing for them.

It seems that Elizabeth Horn purchased two or three negroes. The complainant is not entitled to the negroes, and also to such part of the "profits" of the estate as went to pay for them. This is manifest. All that he can be entitled to is the negroes, their increase, if any, and their hire, if any.

The matured crop on hand when Mrs. Horn died, less the year's expenses, was probably allowed to the complainant by the Jury, as the Court told them they might allow it to him. We think the Jury should also have deducted from this crop such a part of it as would have sufficed to keep up the body of the property until another crop should be made.

There may or may not be other items of demand in the case which the Jury allowed to the complainant, and which they should not have allowed to him. As to that, we do not undertake to speak.

We merely say that we cannot find evidence in the case to support so large a verdict; and this is all that we can say, positively, on the present point.