GILMORE *v.* GILMORE, executor, *et al.*

304

No. 14714. January 6, 1944. Rehearing denied February 11, 1944.

*Hardwick & Averett,* and *Powell, Goldstein, Frazer & Murphy,* for plaintiff.

*E. W. Jordan* and *John R. L. Smith,* for defendants.

WYATT, Justice. A construction of the will of George W. Gilmore will determine as to the correctness of the trial judge's ruling on the general demurrer. The plaintiff contends that the remainder interest in the estate, upon the termination of the life-estate, was contingent both as to person and as to event, and that because of the elimination by codicil of Thomas W. Gilmore and his heirs as beneficiaries under the will, and because of the deaths of Alex C. Gilmore and John D. Gilmore without leaving child or children or descendants thereof surviving them, while she, the life-tenant, is still in life, the remainder estate going to them lapsed, resulting in an intestacy as to that estate; that an intestacy having resulted as to this remainder estate, it reverted to the testator to be distributed to his heirs at law as of the date of his death, and petitioner, being his sole heir at law, is entitled to such reversionary estate in fee simple; that since she has a life-estate in the property under the terms of the will, the life-estate and the reversionary interest merge and vest in her the entire estate in fee simple. Against this contention the defendant contends that the remainders created under the will were remainders that became vested upon the death of the testator, subject to be divested by a condition subsequent, such condition being that if either should die before the death of the life-tenant without leaving child, children or descendants thereof surviving him; and that upon the death of Alex C. Gilmore without leaving child or children or descendants thereof surviving him, after Thomas W. Gilmore and his heirs had been eliminated from the will, John D. Gilmore, the last surviving brother mentioned in the will, took the remainder in fee simple, with possession postponed until the death of the life-tenant.

There is no apparent controversy as to the effect of the codicil eliminating Thomas W. Gilmore and his heirs from participating as beneficiaries under the will. Likewise, there is no contention, nor is the court of the opinion, that the rights of the other named devisees or the scheme of succession were affected by the provisions of the codicil, except as to the quantity and size

of the remainder estates devolving upon them. Therefore the court, in arriving at conclusions and constructions, will consider the will as if all reference to Thomas W. Gilmore and his heirs had originally been omitted. However, reference to the verbiage of the codicil will likely be had for aid in developing and illustrating the intention of the testator. The effect of the codicil in respect to the house on Smith Street will be considered in another division of the opinion.

The first and foremost consideration in construing wills is the ascertaining and giving effect to the intention of the testator as expressed in the whole will, provided it is not inconsistent with the law. *Edmondson* v. *Dyson*, 2 *Ga.* 307, 312; *Sumpter* v. *Carter*, 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274); *Ivey* v. *Davis*, 175 *Ga.* 607 (2) (165 S. E. 605); *Comer* v. *Citizens & Southern Nat. Bank*, 182 *Ga.* 1, 5 (185 S. E. 77). This oft-repeated maxim and guide governing construction must here again be recognized and stressed. In *Olmstead* v. *Dunn*, 72 *Ga.* 850 (1-*a, b*), 855, it was said: "Each will must be construed for itself, and, in large part, depends upon its own terms and the peculiar circumstances surrounding the testator. Among the most important surrounding circumstances are the recipients of testator's bounty, their relations to him and associations with him, his uniform affection for them, or any interruption thereof. . . Every will is a thing to itself. It is emphatically not only *sui juris* but *sui generis*. Its terms are its own law, and the application of that law by construction of itself—of the statute which the testator himself enacted, to the contestants for its bounty, is the plain duty of the court." For general rules of construction resort must necessarily be had to cases involving construction of wills. However, "precedents, or adjudged cases, are of but little authority, and of dangerous application, in deciding upon the intention of the testator; the construction depends so much on each case, upon the character of the testator, the terms he employs, and all the surrounding circumstances." *Cook* v. *Weaver*, 12 *Ga.* 47 (3); *Comer* v. *Citizens & Southern Nat. Bank*, supra. And "unless a case cited be in every respect directly in point and agreed in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar-star to direct them in the construction of wills." Smith *v.* Bell, 6 Peters 80, and quoted ap-

provingly in the case last above cited. With the foregoing principles in view, our first consideration is directed to a diligent search of the whole instrument, in this case the will and the codicil, for the purpose of gathering from all of its terms the intention and dispositive scheme of the testator.

Upon examination of the whole will, it is clear and the conclusion is inescapable that George W. Gilmore desired to provide first for the welfare and comfort of his wife for the duration of her life. This he accomplished by giving to her the entire annual net income from his estate which was valued at more than $122,000. Additionally, if conditions should arise rendering the income insufficient to meet necessary obligations, she was also given the right to encroach upon the corpus. Since the will made no reference to any children of the testator, it is a fair inference that he had none at the time he made the will, as ordinarily he would have been expected to provide for them, and this conclusion is somewhat supported by the allegations of the petition to the effect that he died leaving no child, children, or descendants thereof. Thus, having no children or descendants thereof to whom he could transmit the remainder interest in his estate upon the death of his wife, his next wish, subordinate only to his first desire that his wife be amply provided for, was to keep his property in his own blood, that is, on his side of the family. To effectuate this last desire, he provided that, upon the death of his wife, the remainder estate should go to and remain in his blood. Manifestly, these are the paramount objectives recorded by the testator in his will. This is not a strained construction, neither is it an unnatural one. One in similar circumstances might ordinarily be expected to make his wife, who was first in his affection and duty, secure against worry and want in so far as material substance was concerned. He then might be expected to reward those who were next to him in natural affection, unless and until that affection should be interrupted. Apparently, his three brothers occupied such relationship, at least until there was an interruption as to one of them, viz., Thomas W. Gilmore, who was later deprived by the codicil of sharing with the others. However, the elimination of Thomas W. Gilmore as a beneficiary under the will does not show any intention on the part of the testator to divert from the strain of his own blood the estate in remainder. Now, if that be the intention of the testator ·

as concluded from the aforesaid demonstration, it should and must be controlling and given effect if it does no violence to any established rule of law, or is not decidedly in conflict with the law.

■ The gift to the wife for her life of the entire income from the estate was the equivalent of a life-estate. Code, § 113-805; *Thomas* v. *Owens,* 131 *Ga.* 248, 255 (62 S. E. 218); *Sanders* v. *First Nat. Bank of Atlanta,* 189 *Ga.* 450, 452 (6 S. E. 2d, 294). The fact that the trustees, under item five of the will, were directed to encroach on the corpus of the estate in order to adequately support and maintain the wife, in the event the annual net income should be insufficient for that purpose, did not have the effect of enlarging the estate taken by the wife. The uncertainty of the quantum of an estate, limited upon a life-estate, does not affect or change the character of an otherwise vested remainder, that is, the uncertainty does not make it contingent. 33 Am. Jur. 543, § 87; 4 Thompson on Real Property (perm. ed.), § 2212. Somewhat analogous are the authorities to the effect that a power of use or disposition does not enlarge a previously given life-estate, but confers an added authority. In *Melton* v. *Camp,* 121 *Ga.* 693, 695 (49 S. E. 690), the court said: "It is true the remainder might be defeated by the widow's disposing of the property, but this did not make it a contingent remainder in a legal sense . . The uncertainty as to the mere quantum of property to be possessed did not make the remainder contingent." See *Sumpter* v. *Carter,* supra; *Cochran* v. *Groover,* 156 *Ga.* 323 (4 c), 332 (118 S. E. 865); *Guess* v. *Morgan,* 196 *Ga.* 265 (26 S. E. 2d, 424). If what was said in *Darnell* v. *Barton,* 75 *Ga.* 377, is in conflict with what is said here in this connection, a complete explanation is found in the statement of Mr. Justice Hines in his specially concurring opinion, in *Walters* v. *Walters,* 163 *Ga.* 884, 891 (137 S. E. 386), when commenting upon the *Darnell* case as follows: "What was said in that case as to the uncertainty as to the quantum of the estate which would vest in possession in the remaindermen, as a factor bearing upon the classification of the remainders, was entirely beside the question decided."

■ The next question relates to the nature of the remainder following the life-estate of the widow. "Remainders are either vested or contingent. A vested remainder is one limited to a certain person at a certain time or upon the happening of a necessary event.

A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen." Code, § 85-703. We here repeat what has so many times been said, that while definitions clearly distinguish between a vested and contingent remainder, it is sometimes difficult to determine whether a particular instrument creates a vested or a contingent remainder. That complexity still prevails. In making this distinction it is necessary to examine the language of the will. After devising the estate to his two named brothers in trust, a life-estate was created in the wife by giving to her the entire net income from the estate. Following, in the second sentence of the second paragraph of item two, are the words disposing of the remainder as follows: "At the death of my wife my said estate I give, bequeath and devise to my three brothers [to be considered as 'two brothers' in the light of the codicil], share and share alike." These words standing alone might seem to indicate a desire on the part of the testator to annex time to the gift of the substance as contended by the plaintiff in error. But these words can not be considered alone, unless other terms of the will are to be disregarded. The entire scheme of succession as indicated in the will, as modified by the codicil, must ever be kept in mind, and all the terms and provisions of the instrument be made to harmonize and converge into that scheme so as to render effective the intention of the testator, unless prohibited by some legal barrier. The phraseology employed before and after the words above quoted must be weighed along with them. Previously, the wife had been given a life-estate, then the remainder estate to the two brothers. It was then provided, "but if either of my brothers shall die before or subsequent to the death of my wife leaving no children or descendants of children, then and in that event the share given to such deceased brother shall be divided between my surviving brothers." In view of the codicil, no division would have been possible, but the surviving brother would have taken the whole of such estate. This denotes a completed act and supports the conclusion that the testator had disposed of his entire estate to take effect upon his death, that is, the life-estate to his wife, and the remainder to his brothers, share and share alike, without limitation of a condition precedent. The shares going by way of remainder to the brothers were not contingent upon them, or either of them, being in life at the death of the widow.

This is not a case where the remainder estate was to be divided between the brothers as a class who happened to be in life at the death of the life tenant, or where the share to each brother was dependent upon his being in life at the death of the widow. This view, we think, is further supported by the testator's own language found in the codicil whereby Thomas W. Gilmore as a beneficiary was banished from the will. We quote from the codicil: "I, George W. Gilmore take Thos. W. Gilmore [out] of my last will as executor and do hereby give that share in my will which was given to him, his heirs or assigns, to my brothers, Alex C. Gilmore and John D. Gilmore. . . This only changes the share I give to Alex and John." This language itself bespeaks (and also reaffirms the language of the will) the intention of the testator in reference to the time of the gift of the remainder, thereby illustrating the effect of the words, "At the death of my wife my said estate I give," etc. The brothers taking these remainders were named and their shares were defined. The testator refers unequivocally to the shares as being "given." Therefore, if they are once given and the giving was not dependent upon any precedent contingency, it would seem unreasonable that there was an intention to annex futurity to the gift; but construing the will within its four corners, it appears that the testator intended merely to define the time of the payment or enjoyment of an already vested remainder. In the case of *Burney* v. *Arnold,* 134 *Ga.* 141, 147 (67 S. E. 712), the court held: "The general rule is that when the right of possession of the expectant estate would immediately devolve on the one entitled to the remainder in the event of a determination of the precedent estate, an instrument will be held to create a vested remainder in interest, with the right of possession postponed, unless it appears that the grantor intended otherwise; and this rule is supplemented by a further one that in all cases of doubt as to the intent of the creator of the estate, the law will resolve that doubt in favor of the vesting of the remainder. Thus words relating to time, such as 'when,' 'then,' 'after,' 'from,' etc., in the devise of a remainder after a present estate, determinable on an event which must necessarily happen, are construed to relate merely to the time of enjoyment of the estate, and not to the time of the vesting in interest," citing 24 Am. & Eng. Enc. Law, 395. See also *Pound* v. *Faulkner,* 193 *Ga.* 413, 415, 419 (18 S. E. 2d,

749). The testator's use of the words, "At the death of my wife my said estate I give," etc., was just another way of naming the recipients of the remainder interest in his estate at the termination of the life-estate in the widow. This conclusion is reached, not by a construction of these words alone, but from a consideration of the whole will. "The law presumes that words of postponement relate to the enjoyment of remainder rather than to the vesting thereof, and the intent to postpone the vesting of the estate must be clear and manifest. The general rule is that where a testator creates a particular estate, and then goes on to dispose of the ulterior interest, expressly, in an event which will determine the entire estate, the words descriptive of such event, occurring in the latter devise, will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift, and not as designed to postpone the vesting." 33 Am. Jur., 565, § 109. Other rules of construction, which might be termed as favorites of the law in respect to remainders, and which lend support to this interpretation, are as follows: The law favors the vesting of remainders, and it is an established rule that the court never construes a remainder to be contingent when it can be taken to be vested. An estate is vested when there is an immediate right of enjoyment or a present fixed right of future enjoyment. It is the present capacity of taking effect in possession, if the possession were to become vacant, that distinguishes a vested from a contingent remainder. *Lumpkin* v. *Patterson,* 170 *Ga.* 94 (5), (7) (152 S. E. 448). "The law favors the vesting of remainders in all cases of doubt." Code, § 85-708. It might be added that in cases of doubt as to the character of a remainder, if to construe it as contingent an intestacy would arise, and if to construe it as vested an intestacy would not arise, a construction construing it as vested would be preferable since intestacies are not generally favored in construing wills. Redfearn on Wills and Administration of Estates in Georgia (revised ed.), p. 215; *Foster* v. *Hardee,* 135 *Ga.* 591 (69 S. E. 1110). For other cases distinguishing vested and contingent remainders, see *Schley* v. *Williamson,* 153 *Ga.* 245, (111 S. E. 917); *Refinance Corporation* v. *Wilson,* 183 *Ga.* 336 (188 S. E. 707).

Next following the words which disposed of the remainder estate is found the following provision: "But if either of my broth-

ers shall die before or subsequent to the death of my wife leaving no children or descendants of children, then and in that event the share given to such deceased brother shall be divided between my surviving brothers upon the same limitations, however, that if either of the two survivors prior to or subsequent to the death of my wife shall die without issue, then the whole of said estate shall belong in fee simple to the last surviving brother." Since Thomas W. Gilmore was by the codicil stricken as a beneficiary under the will, it is necessary to consider the foregoing provision as applying only to Alex C. and John D. Gilmore, the other brothers named in the will, in which case said provision should be changed so as to omit reference to a third brother and made to read as follows: "But if either of my brothers (that is, Alex C. Gilmore and John D. Gilmore), shall die before or subsequent to the death of my wife leaving no children or descendants of children, then and in that event the . . whole of said estate shall belong in fee simple to the last surviving brother." The "whole of said estate" in this instance could only mean and refer to the combined interests of the brothers as remaindermen, as it was obviously not the intention of the testator to strike down the life-estate in the widow. This provision does not affect the vested character of the remainders taken by Alex and John, since "a vested remainder may be absolutely or defeasibly vested." *Sumpter* v. *Carter,* supra; *Fields* v. *Lewis,* 118 *Ga.* 573, 576 (45 S. E. 437). "A vested remainder may be determinable upon the happening of a contingency, in which case it is said to be vested, subject to being divested on the happening of a contingency subsequent, and this will not affect its vested character, for a remainder is none the less vested because it is liable to be divested or destroyed." 33 Am. Jur. 544, § 88; *Sumpter* v. *Carter,* supra. Thus the provision here under consideration fixed a manner by which the vested remainder in either Alex or John might become divested. The divestiture was made possible by the happening of a subsequent contingency, which was the death of either of said brothers previously to the death of the widow, without leaving children or descendants thereof. Alex C. Gilmore, having predeceased the widow, leaving John D. Gilmore surviving, and leaving no children or descendants thereof, his vested remainder interest in said estate became divested and went to John D. Gilmore, not as a remainderman, but as a substituted devisee. See,

in this connection, *Speer* v. *Roach,* 145 *Ga.* 852 (90 S. E. 57); *Sumpter* v. *Carter, Schley* v. *Williamson,* and *Sanders* v. *First Nat. Bank of Atlanta,* supra.

It is further provided in item two of the will that if either of the brothers should die before the death of the wife, leaving children or descendants thereof, such children or their descendants shall take the share of the deceased parent per stirpes. If this provision could be said to be applicable to John D. Gilmore as against the former provisions of the will already discussed, it is a subsequent contingency which failed, as John D. Gilmore died leaving no children or descendants thereof, by virtue of which he became indefeasibly vested in title to the estate with possession postponed till the death of the life tenant. He had such an interest as could be conveyed, devised, or transmitted by descent. *Taylor* v. *Sutton,* 15 *Ga.* 103 (8) (60 Am. D. 682); *Crossley* v. *Leslie,* 130 *Ga.* 782 (61 S. E. 851, 14 Ann. Cas. 703).

It is strongly contended by plaintiff in error that Thomas W. Gilmore and his children will eventually become the recipients of the estate of George W. Gilmore under a ruling such as is here made, which would be contrary to the intention of George W. Gilmore as expressed in his codicil. With this contention we can not agree. George W. Gilmore fixed and planned with apparent deliberation a manner by which one of his brothers, either Alex or John, could become indefeasibly vested with what remained of his estate upon the termination of the life estate in his widow. Therefore, when his estate passed to his brother John, it then became the estate of John, who, like his brother George before him, had the unlimited right to dispose of it in a manner satisfactory to himself. If Thomas W. Gilmore and his children should receive any of the fruits of the property comprising the estate of George W. Gilmore, they will do so as beneficiaries under the will of John D. Gilmore.

■ Our last consideration has to do with the following provision of the codicil: "My house on Smith St. I give to my brother Jno. D. Gilmore after the death of my wife, should my wife be the longest liver." If these words are susceptible of any meaning, under well settled principles of law that meaning must be given effect. In *Murphey* v. *Murphey,* 20 *Ga.* 549, 553, the court said: "But it is a general rule of interpretation, that we are not at liberty to

supply words, if the sense does not require it—that we are not at liberty to imply a meaning, if a meaning is expressed." It is provided in our Code, § 85-708, that "the la favors the vesting of remainders in all cases of doubt. In construing wills, words of survivorship shall refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary shall appear." Since no contrary intention is manifested, the words "should my wife be the longest liver," being words of survivorship, must refer to the death of the testator. The wife having outlived the testator, the effect of this portion of the codicil is to give the house to John D. Gilmore after the death of the wife, the inference thereby arising that the wife is entitled to a life-estate in the property with remainder over at her death to John D. Gilmore, which remainder vested at the date of the death of the testator. Whether such vested remainder was subject to the other defeasible clauses in the will, need not be considered, since such contingencies have either materialized or failed and are no longer operative.

Since "every will is a thing to itself," and "precedents, or adjudged cases, are of but little authority, and of dangerous application, in deciding upon the intention of the testator," as above pointed out, we forbear to distinguish the great number of cases cited in behalf of the plaintiff in error. In view of the conclusions here reached, it follows that the trial court did not err in sustaining the general demurrer and in dismissing the petition.

*Judgment affirmed. All the Justices concur, except Jenkins, P. J., absent on account of illness.*