32677. TRUST COMPANY BANK v. HEYWARD et al.
32678. FIRST NATIONAL BANK v. HEYWARD et al.
32679. TRUST COMPANY BANK v. HEYWARD et al.
32680. NORRIS et al. v. TRUST COMPANY BANK et al.

HILL, Justice.

The trustee under the will of James J. Goodrum, Jr., who died in 1928, sought construction, directions, and declaratory judgment with regard to items five (B)(5) and six of the testator's will. Twenty prospective beneficiaries and one representative of potential beneficiaries are parties. The trial judge construed both provisions and ordered distribution. These appeals are brought by two executors and a co-executor of three estates which were found by the trial court to have no interest under the disputed item five (B)(5), and by Alonzo M. Norris, III, and

sixteen other parties who disagree with the award of fees to the trustee under item six.

The testator was a vice president of the Trust Company of Georgia (now the Trust Company Bank) who amassed a sizable estate, primarily in common stocks. For earlier litigation, see *Armistead v. Trust Co. of Ga.,* 180 Ga. 148 (177 SE 787) (1934). His will established a trust of most of his estate. Income from three-fifths of the trust property was to be paid to the testator's wife. The testator had no children. His brother and three sisters predeceased his wife, who died in 1976. Item five (B)(5) of the will applies in these circumstances[1] and directs the following distribution (each of the sentences in this item is numbered for later reference): "[1] Upon the death of my beloved wife . . . to divide the remaining income from the remainder of three-fifths of said trust estate, . . . equally share and share alike between my brother and three sisters for and during the natural life of each of them. [2] As each of said beneficiaries dies to divide among his or her children surviving equally share and share alike a one-fourth part of said remaining three-fifths of the trust estate. [3] On the event my brother or any of my sisters shall have predeceased my wife the child or children of such brother or sister shall take per stirpes a one-fourth share of such remainder of the three-fifths portion of the trust estate. [4] On the event my brother or any of my sisters shall die without leaving child or children them surviving, the presumptive share of such brother or sister shall accrue to surviving brother and sisters and descendants of deceased brother and sisters, the later to take per stirpes the share of their parent." It is the sentence numbered 3 above which is at the center of this controversy. In construing that sentence it should be kept in mind that the intent of the testator is to be found in this item and the will as a whole as well as in this sentence.

---

[1] Item five (A) of the will provided for disposition if the testator were survived by child or children. It thus is inapplicable here except to show the testator's intent. Item five (B) of the will provides for disposition if the testator dies without surviving child or children.

One sister, Mary, died without children or other descendants. The three other siblings died with children surviving them and with no child predeceasing the parent.

The brother was survived by three children. One is a party to this litigation, and two predeceased the testator's wife. Their estates are parties, and each had two children who also are parties.

The two other sisters were each survived by two children, all of whom predeceased the testator's wife. Their estates are parties. One had no children. Two had two children each, who are parties. The fourth child of these sisters had two children. One child is a party. The other predeceased the testator's wife and was survived by his two children. His estate and the two children are parties.

The trial judge found that the testator intended that each remainderman survive the testator's wife. He found that the fourth sentence of item five (B)(5) directs distribution of Mary's presumptive share to the descendants per stirpes, who were living at the death of the testator's wife. The judge found that in the third sentence, the testator's use of the words "child or children" and "per stirpes" created an ambiguity which is capable of construction. He found that the testator intended that the one-fourth share of each deceased sibling be distributed per stirpes to the sibling's descendants who survived the testator's wife.

1. The executor of the estate of a nephew of the testator contends that the trial judge erred in finding that the testator intended in the last two sentences of item five (B)(5) of the will that each remainderman survive the testator's wife. This nephew died without descendants in 1958, having survived his parent, a sister of the testator. A similar view is urged by the corporate co-executor of the estate of another nephew of the testator. This co-executor contends that the trial judge erred in finding that interests of a deceased nephew under sentences three and four of item five (B)(5) were divested in favor of his descendants who were living at the time of distribution. The nephew died in 1975, predeceasing the testator's wife. His two children are in life, and were found by the trial

court to receive an interest directly under the testator's will, thus precluding that interest from passing through the estate of their father, as urged by the co-executor.

The trial judge scrutinized the entire will and found that a condition of survivorship to the time of distribution is manifest. He considered the provisions regarding the testator's brother and sisters in the first two sentences of item five (B)(5) which require that each survive the testator's wife in order to receive an interest in the trust property. We find that the testator did not intend his wife or his brother and sisters to control the disposition of the trust property at all. In addition we find five other instances of the testator's denial of posthumous control to a descendant who did not survive to the time of distribution. In item five (A)(3) prospective children of his sister Mary are required to be "surviving her" in order to receive an interest at her death. In item five (A)(5) the testator would not have allowed his own children, had he been so blessed, to posthumously control an interest in his estate. He required them to survive his wife, regardless of what age a child might attain before her death. Similar exclusions from posthumous control are found in item five (B)(2).

Review of the entire will also reveals the testator's general intent that a deceased remainderman's children surviving at distribution would have taken the parent's interest. In item five (A)(4) the testator directed, "Descendants of deceased children to take per stirpes the share of their parent." By this provision the interest of a deceased child or descendant would pass to his living descendants by reason of his death before the time of distribution. In items five (A)(3), five (A)(5), five (B)(2) and five (B)(3) we find similar provisions which would pass interests in children, nieces, nephews and their descendants to the living descendants by reason of death before time of distribution.

The trial judge found that the testator intended remaindermen under the third sentence of item five (B)(5) to survive his wife. The testator began item five (B)(5), "Upon the death of my beloved wife . . ." and continued by directing that the life interest of his wife be awarded to his

brother and sisters, and that as "each of said beneficiaries dies to divide among his or her children surviving" the sibling's share. This sequence of directions indicates that the testator contemplated the remaindermen survive both their parent and the testator's wife in order to receive an interest, and no interest remained for a descendant who predeceased either of these persons. Because of these directions and because of the testator's prior, consistent imposition of conditions of survivorship to the time of distribution, we hold that the trial judge was correct in finding that the testator intended the remaindermen in the third sentence to survive the testator's wife in order to "take per stirpes a one-fourth share. . ."

The trial judge found that the testator intended survivorship of his widow by the remaindermen under the last sentence of item five (B)(5), which provides that the presumptive share of a sibling who has no descendants shall be distributed to "surviving brother and sisters and descendants of deceased brother and sisters, the latter to take per stirpes the share of their parent." It is clear from the first two sentences of item five (B)(5) that any distribution under sentence four could occur only after the death of the testator's wife. Therefore, sentence four clearly required his brother and sisters to survive his wife, and indicates that he expected no less from the descendants of his brother and sisters. Because of this requirement, and because of the testator's prior consistent imposition of conditions of survivorship to the time of distribution, we hold that the trial judge was correct in finding that the testator intended only those descendants who survive the widow as well as the parent "to take per stirpes the share of their parent."

*Witcher v. Witcher,* 231 Ga. 49 (200 SE2d 110) (1973), *Fields v. Lewis,* 118 Ga. 573 (45 SE 437) (1903), and similar cases have found that only conditional divestments were intended by the testator and have relied on Code Ann. § 85-708, which mandates that remainders shall vest early, "unless a manifest intention to the contrary shall appear." In the case now before us, the testator's intent to require survivorship to distribution is clearly manifest. In *Gilmore v. Gilmore,* 197 Ga. 303 (29 SE2d 74) (1944), the testator provided that if two of the

three brothers died without descendants, "then the whole of said estate shall belong in fee simple to the last surviving brother." This language, and not a preference for early vesting, was the basis for the holding that the last brother's interest was vested after the death of the first two and therefore passed through his will even though he also died before the end of the preceding life income interest of the widow. The trial judge in the case now before us did not err in finding that it was the testator's intention that remaindermen under the last two sentences of item five (B)(5) must have survived the testator's wife. Code § 113-806; *Patterson v. Patterson,* 208 Ga. 17 (1) (64 SE2d 585) (1951); Code § 85-704; *Britt v. Fincher,* 202 Ga. 661 (44 SE2d 372) (1947); *Boyd v. Sanders,* 141 Ga. 405 (81 SE 205) (1913).

2. The executor of the estate of the wife of the testator contends that when siblings with a child or children surviving them predecease the testator's wife, the third sentence creates class gifts. Each class would consist of such a sibling's children who survive the testator's wife. Three siblings predeceased the testator's wife with children surviving them. However, only one child survived the testator's wife. Therefore, the executor contends that this child should receive one-fourth of the trust estate and that the other two-fourths should pass by the laws of intestacy to the estate of the testator's sole heir at law, his now deceased wife.

The executor believes that Code Ann. § 113-806[2] requires both the adoption of this result and the rejection of the construction by the trial judge.

We disagree. The third sentence of item five (B)(5)

_____

[2] Code Ann. § 113-806 provides: "In the construction of all legacies, the court shall seek diligently for the intention of the testator and give effect to the same as far as it may be consistent with the rules of law; and to this end the court may transpose sentences or clauses, and change connecting conjunctions, or even supply omitted words in cases where the clause as it stands is unintelligible or inoperative, and the proof of intention is clear and unquestionable; but if the clause as it stands may have effect, it shall be so construed, however well

would not be given full effect in the construction urged by the executor of the wife's estate, because the words "per stirpes," which are included in that sentence, would not have any part in that construction. Code Ann. § 113-806 does not prohibit the construction given item five (B)(5) by the trial judge. *Maclean v. Williams,* 116 Ga. 257 (42 SE 485) (1902). See *Shoup v. Williams,* 148 Ga. 747 (98 SE 348) (1918). A construction which results in partial intestacy is not preferred. *Trammell v. Elliott,* 230 Ga. 841 (4) (199 SE2d 194) (1973); *Harper v. Fuller,* 214 Ga. 67 (102 SE2d 553) (1958). See Redfearn, Wills and Administration in Georgia, § 142 (1965 Supp. 1977).

3. The corporate co-executor contends that the trial judge erred in ordering distributions to descendants of a niece and four nephews. The niece and four nephews were siblings' children who did not survive the testator's wife. The descendants of the niece and four nephews did survive the testator's wife. The trial judge found that the testator intended that descendants of a sibling and not just the child or children of the sibling were granted remainders by the third sentence of item five (B)(5).

Although the phrases differed slightly, the testator used several similar phrases in seven instances to denote substitute remaindermen if the prior remaindermen were to die before the time of distribution. For example, in the last sentence of item five (B)(5) he directed that the remainder would pass to "descendants of deceased brother and sisters, the latter to take per stirpes the share of their parent." In item five (A)(3) he wrote with regard to a sister's prospective children, "Descendants of deceased children to take per stirpes the share of their parents." In item five (B)(3) he wrote, "Children of deceased nephews and nieces to take per stirpes the share of their parent." In items five A(4) and B(2) he used "descendants" and in item five A(5) he used "children." A review of all of these phrases indicates that the testator used "children" interchangeably with "descendants" but meant "descendants" in each case. This reading of the testator's intent is supported by his use of "per stirpes" in each

---

satisfied the court may be of a different testamentary intention."

clause. If a parent's child or children were intended to take the share set aside for the deceased parent, there is no need to add that such child or children take "per stirpes," since the parent's share is already established. However, if a parent's descendants who survive the time for distribution are to take the parent's share, then "per stirpes" will direct the portions of the share which pass to each descendant.

We find that the trial court did not err in finding that the testator intended the words "child or children" in the third sentence of item five (B)(5) to include the descendants of his brother and sisters. *MacGregor v. Roux,* 198 Ga. 520 (32 SE2d 289) (1944); *Shoup v. Williams,* supra. See *Worley v. Smith,* 236 Ga. 888 (225 SE2d 911) (1976); *Hampton v. Dean,* 239 Ga. 205 (1977); 8 AmJur2d Wills, § 1201. The distribution ordered by the trial court has not been shown to be in error.

Cases similar to *Willis v. Jenkins,* 30 Ga. 167 (1860), *Armstrong Junior College Comm. v. Livesey,* 189 Ga. 825 (7 SE2d 678) (1940), and *Wilson v. Ingram,* 207 Ga. 271 (61 SE2d 126) (1950), hold that because the popular and legal sense of the word "children" ordinarily includes only the first generation of offspring, the courts will not ordinarily find that other descendants are included unless there is "something in the context showing that a larger signification is intended," *Wilson,* supra at 271, or unless there is "something in the will to indicate and effectuate such intention by the testator," *Armstrong,* supra at 831. In the will now before us we find ample evidence that the testator intended that the word "children" as used in sentence three of item five (B)(5) was used to mean "descendants."

4. The cross appellants contend that the trial court erred in finding that the testator intended that Trust Company Bank shall receive three percent of the reasonable value of all property in kind handled as executor and three percent of all property in kind handled as trustee. In item six of his will, the testator wrote:

"I nominate Trust Company of Georgia as Executor of this Will; and I will and direct that said Trust Company of Georgia shall receive as compensation for its services as executor and as trustee the usual fees allowed by law,

provided always that it shall receive three percent of the reasonable value, and no more, of all property in kind handled by said Trust Company in either of its capacities."

The fees allowed by law in 1928 included generally (a) two and one-half percent on sums of money received and on sums of money paid out, (b) ten percent of the interest due to and paid to the estate on loans, (c) reasonable compensation as allowed by the ordinary (now probate judge) for delivering over property in kind, excluding stocks and bonds delivered in discharge of a general legacy (*Walton v. Gairdner,* 111 Ga. 343 (2) (36 SE 666) (1900)), but not exceeding three percent of the appraised value unless the property be managed, and (d) extra compensation allowed by the ordinary for extraordinary services. Civil Code of 1910, §§ 4062, 4063, 4065, 4067. See also Civil Code of 1910, §§ 3777, 3071. A person who handled the same fund in separate fiduciary capacities was entitled to separate compensation for services rendered in each respective fiduciary capacity. *Griffin v. Collins,* 125 Ga. 159 (53 SE 1004) (1906).[3]

The cross appellants believe that the proviso in item six was intended to restrict payment to the bank to a total of three percent of the reasonable value of property in kind handled by it, regardless of the capacity in which the bank handled the property. In effect, the cross appellants contend the testator intended to restrict the application of *Griffin v. Collins,* supra, by using the words "either" and "no more."

The word "either" is defined as meaning the one *and* the other of the two, as well as meaning the one *or* the other of the two. Webster's Third New International Dictionary (1967); Black's Law Dictionary (4th Ed. 1968); *Jackson v. Stewart,* 20 Ga. 120 (1856). However, the

---

[3] These general provisions for compensation of fiduciaries have continued in force without major alteration since 1928. See Code Ann. §§ 113-2001, 113-2002, 113-2004, 113-2008, 108-432, 49-223; *Gaines v. Johnson,* 216 Ga. 668 (119 SE2d 28) (1961). But see Ga. L. 1941, p. 299.

ambiguity created by the proviso would not be fully resolved had the testator used the word "both." See *Holcomb v. Word,* 239 Ga. 847 (239 SE2d 29) (1977). Had the testator simply omitted altogether the phrase "in either of its capacities," the meaning of item six as urged by the cross appellants would be more certain. However, we must review the finding of the testator's intent as item six is expressed in the will.

We are reminded by the bank that the testator was accustomed to dealing with large sums of money. See *Armistead v. Trust Co. of Georgia,* 180 Ga. 148, supra. We must expect that he was familiar with the compensation of trustees and executors, and the laws related thereto. Code of 1910, § 4065; *Walton v. Gairdner,* supra. We do not find that the trial judge erred in finding that the bank is due three percent of the reasonable value of all property in kind handled as executor and three percent of all property in kind handled as trustee.

*Judgment affirmed. All the Justices concur, except Marshall, J., who is disqualified.*

ARGUED SEPTEMBER 21, 1977 — DECIDED JANUARY 20, 1978.

*King & Spalding, John A. Wallace, Henry L. Bowden, Jr., L. Joseph Loveland,* for appellant (case no. 32677).

*Sanders, Mottola, Haugen & Goodson, Willis G. Haugen,* for appellant (case no. 32678).

*Troutman, Sanders, Lockerman & Ashmore, Tench Coxe, Wayne R. Vason,* for appellant (case no. 32679).

*Horton & Crim, William W. Horton, Hurt, Richardson, Garner, Todd & Cadenhead, Charles D. Hurt, Jr., Paul M. Talmadge, Jr., Mathews, Knight, Jones & MacNabb, Byron H. Mathews, Jr.,* for cross-appellants, *Verner F. Chaffin,* of counsel to cross-appellants (case no. 32680).

*Hurt, Richardson, Garner, Todd & Cadenhead, Charles D. Hurt, Jr., Paul M. Talmadge, Jr., Mathews, Knight, Jones & MacNabb, Byron H. Mathews, Jr., Horton & Crim, William W. Horton, Horack, Talley, Pharr & Lowndes, Benjamin S. Horack, Ulmer, Murchison, Ashby & Ball, Clarence G. Ashby,* for Heyward et al., appellees,

*Verner F. Chaffin,* of counsel to appellees.

*Hansell, Post, Brandon & Dorsey, John H. Boman, Jr., Edward S. Grenwald, R. Neal Manners, Mitchell, Clarke, Pate & Anderson, Thomas Hal Clarke, Jr., King & Spalding, Henry L. Bowden, Jr., John A. Wallace, Joseph B. Haynes,* for Trust Company Bank et al.

*Alston, Miller & Gaines, Robert Edge, Jeffrey P. Adams,* for class representative.