37264. FIRST PRESBYTERIAN CHURCH OF ATLANTA v. PRICE.
37265. SERVANTS OF RELIEF FOR INCURABLE CANCER, INC. v. PRICE.
37333. PRICE et al. v. PRICE et al.

HILL, Presiding Justice.

This is a will construction case. May Evins Gilfillan died on May 2, 1963. Her will created a life estate in all of her real and personal property for Elsie Evins Kersey, her sister, who died on August 15, 1979. Following the death of the life tenant, Julian Price, Sr., as

executor, filed a petition for construction of the will and direction as to the proper distribution of the estate.

After providing that her debts be paid, the testatrix provided as follows:

"ITEM TWO. If my sister, MRS. ELSIE EVINS KERSEY, survives me, I give, devise, and bequeath to her, for her to have, hold, use and enjoy, for so long as she shall live following my death, all my property of every kind and description, both real and personal, and wherever located, and including the income therefrom from the time of my death until her death.

"ITEM THREE. Upon the death of my sister, or upon my death, should she be deceased at that time, my Executors shall distribute all of my estate, the rest, residue, and remainder of my property of every kind and description, both real and personal, and wherever located, including any lapsed or void legacy or devise and any property ever [sic] which I may have the power of disposition or appointment, as hereinafter set forth.

"ITEM FOUR. I give, devise, and bequeath to MRS. JOHN I. GOSSETT a life interest in my property at 863 Gordon Street, S. W., which is now leased to Mr. Ullman. Upon the death of Mrs. John I. Gossett, I give, devise, and bequeath the remainder interest in this property, in fee simple, to MRS. JULIAN PRICE, SR.

"ITEM FIVE. I give, devise, and bequeath to DAVID G. PRICE, in fee simple, my property at 861 Gordon Street, S. W., which is now leased to Mr. Bowen.

"ITEM SIX. I give and bequeath the sum of TEN THOUSAND & NO/100 ($10,000.00) DOLLARS in cash, which my Executors shall invest in a home to be selected by LUM BROOM and his wife, PETRONIA BROOM, and deeded to them in fee simple provided they are still our employees.

"ITEM SEVEN. I give and bequeath the sum of TWENTY THOUSAND & NO/100 ($20,000.00) DOLLARS in cash to the First Presbyterian Church of Atlanta as a 'Room Fund' memorial gift. I direct that a suitable brass marker plate be provided to identify the gift as being made

IN MEMORY

'The Three Sisters'

MRS. MAY EVINS GILFILLAN
MISS DOLLIE EVINS
MRS. 'PET' EVINS KERSEY

"ITEM EIGHT. I give and bequeath to JOHN F. GILFILLAN, Rome, Georgia, TEN THOUSAND & NO/100 ($10,000.00) DOL-

LARS in cash, upon the condition that he will search for and locate his brother's grave and will have same put in good condition and marked with a suitable headstone. I authorize my Executors to pay the cost and allow reasonable time for the search to be made and the condition of this bequest to be put into effect. The TEN THOUSAND & NO/100 ($10,000.00) DOLLARS is not to be distributed by my Executors until the condition has been fully discharged.

"ITEM NINE. I give and bequeath the sum of FIVE HUNDRED & NO/100 ($500.00) DOLLARS in cash to each of the following, if they are in life or existence: [Eleven individual and two charitable beneficiaries are named.]

"ITEM TEN. I give and bequeath the sum of ONE THOUSAND & NO/100 ($1,000.00) DOLLARS in cash to each of the following, if they are in life or existence: [Nine individual and six charitable beneficiaries are named.]

"ITEM ELEVEN. I give and bequeath the sum of TWO THOUSAND & NO/100 ($2,000.00) DOLLARS in cash to each of the following, if they are in life or existence: [Three individual and two charitable beneficiaries are named; one individual; 'our paper carrier', is to receive the bequest 'for his education.']

"ITEM TWELVE. I give and bequeath the sum of THREE THOUSAND & NO/100 ($3,000.00) DOLLARS in cash to PETRONIA BROOM, if she is still our employee.

"ITEM THIRTEEN. I give and bequeath the sum of FIVE THOUSAND & NO/100 ($5,000.00) DOLLARS in cash to each of the following, if they are in life or existence: [Four individual and three charitable beneficiaries are named; one of the individuals is Mrs. John I. Gossett who is also named in items 4 and 14; another individual named herein is Clyde Chapman, testatrix's attorney and scrivener of the will.]

"ITEM FOURTEEN. All my household furniture and furnishings, books, pictures, objects of art, silverware, jewelry, clothing, and such personal effects and any automobile I may own at the time of my death, I give and bequeath to MRS. JOHN I. GOSSETT. In the interim between the date of this Will and my death it is my intention to express to her my wishes as to what disposition she may make of particular items of such personal effects as given to her in this Item, having full faith and confidence in her that she will consider and respect my wishes in the matter. I prefer to handle this Item in this manner because of the doubtful money value of many of said items. Many of the items are gifts from friends and relatives and do have a very great sentimental value. I feel I can best express this to Ethel and she will in making disposition thereof remember such

statements as I shall make to her.

"ITEM FIFTEEN. After the foregoing gifts, devises, and bequests have been paid or satisfied in full by my Executors, should there remain in their hands any remainder, I give, devise, and bequeath such residue and remainder to the various beneficiaries and charities hereinbefore named to be distributed to them by my Executors after dividing the same on the basis of the ratio of the amount given to each beneficiary and charity as hereinbefore listed, except that the charities shall participate on the ratio of Three (3) to One (1) to the other beneficiaries. All values used in making the computations required under this Item shall be the values used on the Federal Estate Tax Return to be filed by my Executors.

"ITEM SIXTEEN. I hereby constitute and appoint my sister as Executor of this Will, if she survives me. Should my sister cease to act or fail to become my Executor for any reason, I hereby constitute and appoint and substitute for her as my Executors, JULIAN PRICE, SR., and MRS. JOHN I. GOSSETT."

The rest of the will provides for the powers of the executors, and sets forth an in terrorem clause which provides that if any beneficiary contests the validity of the will or any provision thereof, then the benefits for such beneficiary are revoked and such benefits "shall go to the charity beneficiaries of this Will to be divided on the basis of the ratio of the amount given to each as hereinabove listed." Lastly, the will requests that the executors employ Clyde Chapman to probate the will and represent the estate. The residuary estate amounts to about $561,421.

The trial court made the following rulings pertinent to this appeal: (1) The phrase "if they are in life or existence" contained in Items Nine, Ten, Eleven and Thirteen fixes vesting at the date of death of the testatrix; (2) the values of properties bequeathed and devised in Items Four, Five and Fourteen should not be included in determining the aggregate sum of all devises and bequests for the purpose of computing the amounts of the residuary distributive shares; (3) Items Six and Eight should not be included in computing the amounts of the respective shares of the residuary estate; and (4) the residuary estate (Item Fifteen) should be divided among the beneficiaries in Items Nine, Ten, Eleven, Twelve and Thirteen in accordance with a formula specifically applicable to Items Nine through Thirteen.

The appellants to this consolidated appeal include: First Presbyterian Church of Atlanta, a legatee under Item Seven which was excluded from participating in the residuary estate under the trial court's order; Servants of Relief for Incurable Cancer, Inc., a legatee under Item Ten which contests the trial court's construction

of the will; David G. Price, a devisee under Item Five who was excluded from participating in the residuary estate; and Clara Miller Gilfillan, whose deceased husband, John F. Gilfillan, was named in Item Eight and who was also excluded from participating in the residuary estate. The appellees appearing in this court are Clyde Chapman, who was testatrix's attorney, the scrivener of the will and a legatee under Item Thirteen; William Culp, the paper carrier named in Item Eleven who was to receive the bequest for his education; and Julian Price, Sr., a legatee under Item Eleven and executor of the Gilfillan estate.

These appeals raise three basic issues, the first of which is whether the gifts, devises and bequests provided in Items Nine, Ten, Eleven and Thirteen vest at the death of the testatrix, or at the death of the life tenant. The second issue is which beneficiaries are included in the residuary provision, Item Fifteen. The final issue is what is the proper formula for distribution under Item Fifteen.

1. Code § 85-708 provides: "The law favors the vesting of remainders in all cases of doubt. In construing wills, words of survivorship shall refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary shall appear." Thus, absent a manifest intention to the contrary, the law favors early vesting of remainders.

Structural analysis of the will manifests the testatrix's intention as to Items Nine, Ten, Eleven and Thirteen contrary to the vesting of remainders favored by the law. Item Two left everything the testatrix had to her sister Elsie Evins Kersey for life. Item Three introduces the distributive scheme upon the death of the life tenant. It uses words similar to a residuary provision ("rest, residue, and remainder"). Thereafter the will specifies numerous devises and bequests in Items Four through Fourteen, ending the distributive scheme with the residuary provision in Item Fifteen. Thus, Item Nine (as well as Items Ten, Eleven and Thirteen) should be read in the context created by Item Three, as follows: "ITEM THREE. Upon the death of my sister . . . my Executors shall distribute all of my estate [existing after the life estate in my sister created in Item 2], the rest, residue, and remainder of my property of every kind and description . . . as hereinafter set forth. . . . ITEM NINE. I give and bequeath the sum of FIVE HUNDRED & NO/100 ($500.00) DOLLARS in cash to each of the following, if they are in life or existence." We find it highly unlikely that the testatrix would have intended to make gifts to charities in existence at her death which were not in existence at the life tenant's death.

Considering the distributive scheme of the testatrix and the will as a whole, we find that the words "if they are in life or existence" in

Items Nine, Ten, Eleven and Thirteen mean "if they are in life or existence at the time of distribution," either the death of the testatrix or the death of the life tenant, whichever occurs later. The condition which makes these remainders contingent is that the persons and entities named may not be in life or existence at the death of the life tenant. See Code § 85-703. The trial court erred in finding that Items Nine, Ten, Eleven and Thirteen vested at the death of the testatrix.

*Gilmore v. Gilmore,* 197 Ga. 303 (29 SE2d 74) (1944), cited by cross appellants David Price and Clara Gilfillan, is inapposite. In that case, the testator did not condition the legacies on surviving the life tenant as was accomplished here by the words "if they are in life or existence" when considered in the context of the whole will. As was noted in the *Gilmore* case, supra, 197 Ga. at 309, precedents "are of but little authority, and of dangerous application, in deciding upon the intention of the testator; the construction depends so much on each case, upon the character of the testator, the terms he employs, and all the surrounding circumstances." See also *Trust Co. Bank v. Heyward,* 240 Ga. 557, 561-562 (242 SE2d 257) (1978).

2. It is argued that the trial court erred in limiting the distribution under Item Fifteen to the beneficiaries under Items Nine through Thirteen and in excluding from Item Fifteen the beneficiaries under Items Four through Eight and Fourteen. We agree.

Item Fifteen provides in pertinent part: ". . . I give, devise, and bequeath such residue and remainder to the various beneficiaries and charities hereinbefore named. . . . All values used in making the computations required under this Item shall be the values used on the Federal Estate Tax Return to be filed by my Executors." If the testatrix had intended that the beneficiaries under Item Fifteen were to be limited to Items Nine through Thirteen (all gifts of cash), then there would have been no need to refer to the "values used on the Federal Estate Tax Return."[1] In order to effectuate the testatrix's intent and so as not to render the last sentence of Item Fifteen meaningless, we find that the testatrix intended the beneficiaries in Items Four, Five and Fourteen to be entitled to take under the residuary provision, Item Fifteen.[2]

---

[1] We recognize that testatrix's reliance on the values used in the Federal Estate Tax Return on her estate might refer to properties in her estate other than those specified in Items Four, Five and Fourteen. For example, her residence on Peachtree was valued at $125,000 on the tax return and was sold after the death of the life tenant for $260,000. We reject the possibility that testatrix intended that her residence should be included in the residuary provision at the value of $125,000, rather than at its value of the time of distribution of the residuary estate.

[2] As for Item Fourteen, testatrix's household and personal effects were valued at

This interpretation is supported by the testatrix's proper use of the word "devise" in Items Four and Five devising real property, see Redfearn, Wills and Administration of Estates, 4th, § 153 (1979), the omission of the word "devise" in Items Six through Fourteen bequeathing cash and personal property, followed by the inclusion of the word "devises" in the residuary provision. That is to say, Items Four and Five relate to real property and correctly use the word "devise," whereas Items Six through Fourteen correctly use the word "bequeath." Item Fifteen reads "After the foregoing gifts, devises, and bequests have been paid or satisfied in full. . . ." The inclusion in Item Fifteen of the word "devises" reinforces the testatrix's intention that the Item Four and Five devisees be included in Item Fifteen. Having determined that the Item Four, Five and Fourteen beneficiaries were intended to be included in the residuary provision, we can find no basis for including the Item Four, Five, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen beneficiaries, but excluding therefrom the Item Six, Seven and Eight beneficiaries.

Thus, the words used in the will, including the language of Item Fifteen itself, coupled with the testatrix's distributive scheme (see division one), shows the intent of the testatrix that all beneficiaries under Items Four through Fourteen be included in Item Fifteen. The trial court therefore erred in excluding the beneficiaries under Items Four through Eight and Fourteen from sharing in the residuary provisions of Item Fifteen.

3. It is argued that the trial court erred in construing the distribution formula of Item Fifteen. That formula is as follows: ". . . I give, devise, and bequeath such residue and remainder to the various beneficiaries and charities hereinbefore named to be distributed to them by my Executors after dividing the same on the basis of the ratio of the amount given to each beneficiary and charity [in cash or as valued on the Federal Estate Tax Return] as hereinbefore listed, except that the charities shall participate on the ratio of Three (3) to One (1) to the other beneficiaries." It should be noted that testatrix used the words "the amount given to *each* beneficiary and charity," not "the amount given to each category of beneficiaries."

The First Presbyterian Church of Atlanta and Servants of Relief of Incurable Cancer (hereinafter "the charities") urge that the residue of the estate should be divided into two parts: one part consisting of three-fourths of the residue and one part consisting of

$17,500 on the Federal Estate Tax Return; testatrix trusted Mrs. Gossett to carry out her wishes and it is not for us to do otherwise than to interpret the will according to the intent of the testatrix.

one-fourth of the residue. They argue that the testatrix intended the charitable beneficiaries to share in the three-fourths portion ratably in proportion to their respective bequests and that the individual beneficiaries share likewise in the one-fourth portion. Appellee Clyde Chapman, the scrivener of and a beneficiary under the will, agrees with the charities' position to his detriment.[3] We do not agree.

The charities and scrivener would read the distribution formula in reverse, by making the exception ["except that the charities shall participate on the ratio of Three (3) to One (1)"] the first step under the formula.[4] According to the testatrix's formula, the residuary estate is to be distributed "on the basis of the ratio of the amount given *each* beneficiary and charity as hereinbefore listed, except that the charities shall participate on the ratio of Three (3) to One (1) to the other beneficiaries." (Emphasis supplied.) On remand, the trial court should [1] determine the amount (or value) *each* beneficiary and charity in Items Four through Fourteen was entitled by those items to receive at the death of the life tenant; [2] total the amounts *each* noncharitable beneficiary received; [3] multiply the amounts *each* charitable beneficiary received by 3 and total those amounts; [4] add the sums computed in steps 2 and 3; [5] divide that total into the amount of the residuary estate; [6] multiply that figure by the amount attributable to *each* noncharitable beneficiary listed in step 2; [7] multiply that same figure (step 5) by the trebled amount attributable to *each* charitable beneficiary listed in step 3; and [8] order the remainder under Item Fifteen distributed to *each* beneficiary and charity in accordance with steps 6 and 7. This formula is essentially the same as that offered by the executor in paragraph 13 of his petition.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 14, 1981 —
REHEARING DENIED JULY 28, 1981 IN CASE NO. 37264.

---

[3] Although parol evidence is admissible to construe an ambiguous will, such evidence will not be allowed to contradict the will; that is, where a will is ambiguous and susceptible to two interpretations, parol evidence as to a third interpretation of which the will is not susceptible is not to be considered. *Napier v. Little,* 137 Ga. 242, 247 (73 SE 3) (1911); *Hanvy v. Moore,* 140 Ga. 691 (4) (79 SE 772) (1913); *Snellings v. Downer,* 193 Ga. 340, 343 (18 SE2d 531) (1942); Code Ann. §§ 38-501 and 38-504; see e.g., *Kellos v. Parker-Sharpe,* Inc., 245 Ga. 130 (1) (263 SE2d 138) (1980).

[4] In rejecting the charities' interpretation of the distribution formula in Item Fifteen of testatrix's will, we imply no interpretation whatsoever as to the distribution formula in the residuary provision in the life tenant's will.

*Powell, Goldstein, Frazer & Murphy, James N. Frazer, John T. Marshall, Robert L. Connelly, Jr.,* for appellant (case no. 37264).

*Smith, Cohen, Ringel, Kohler & Martin, Kenneth L. Millwood, John L. Latham,* for appellant (case no. 37265).

*John W. Spears, John C. Joyner,* for appellants (case no. 37333).

*Davis & Stringer, Thomas O. Davis, Clyde W. Chapman, Ruth Davis, Jones, Bird & Howell, Robert Croft Young, Peek & Whaley, William H. Whaley, McCurdy & Candler, Michael Mears, King & Spalding, Charles L. Gowen, Henry L. Bowden, Jr., Westmoreland, Hall, McGee, Warner & Oxford, John L. Westmoreland, Jr.,* for appellees.