McGinnis *vs.* Foster.

No. 42.—STEPHEN W. McGINNIS, Adm'r. &c., plaintiff in error, *vs.* RANSOM FOSTER, Ex'r, &c.

[1.] Robert Foster made his will as follows : "I give and bequeath unto my beloved wife, Celia Foster, all my estate, both real and personal, after my just debts and funeral expenses are paid, during her life or widowhood. In case my wife should die, or exchange her situation by marriage, it is my will, that a sale be made of all my property, both real and personal, and the proceeds be equally divided among my children." Celia Foster, a daughter of the testator, intermarried with Stephen W. McGinnis, after the death of her father, and died before her mother. *Held,* That the children of Robert Foster, who survived him, took at *his* death a vested remainder in his estate.

[2.] And that Stephen W. McGinnis, the husband of Celia, is entitled, as her Administrator, to receive her share of said property, and enjoy the same without being subject to distribution.

In Equity.—Tried before his Honor, Judge WRIGHT, March Term, Forsyth Superior Court, 1848.

The facts are stated in the opinion of the Court.

H. L. SIMS, and W. H. UNDERWOOD, for plaintiff in error, argued :

1st. That Robert Foster's children took a *vested* interest in remainder at his death. *Preston on Estates,* 94, 98. *Fearne on Rem.* 25 *Wend.* 119. 8 *Barns & Cress.* 231. 1 *Watt. & Sergt.* 205. 4 *Kent,* 201, *et seq.*

2d. It was a chose in action at the death of Celia McGinnis. 2 *Kent,* 231, *et seq. and cases there cited.*

3d. It goes to the husband as Administrator. 2 *Kent,* 135, *and cases cited.* 2 *Bl.* 515, 519. *Hotchkiss,* 428, *Sect.* 1.

W. AKIN and ELAM, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Robert Foster, being possessed of considerable estate, on the 25th of December, 1828, made the following disposition thereof by will: "I give and bequeath unto my beloved wife, Celia Foster, all my estate, both real and personal, after all my just debts and funeral expenses are paid, during her life or widowhood. In

case my wife should die or exchange her situation by marriage, it is my will that a sale be made of all my property, both real and personal, and the proceeds be equally divided among my children." Shortly thereafter, the testator died, leaving, among other children then in life, Celia, a daughter, who subsequently intermarried with Stephen W. McGinnis. In 1843, Celia died, leaving one child; and in 1846, her mother, the widow of the testator, died, without having changed her situation by marriage. Stephen W. McGinnis administered on the estate of his deceased wife, and filed his bill to recover her portion of the property left by her father; a general demurrer to which was sustained by the Court below, and the bill ordered to be dismissed. To this decision, the complainant, by his counsel, excepted, and insisted, as he does still, that there was manifest error in said order.

Two questions are made by the record: *First*, did the children of Robert Foster take a *vested* remainder in his estate at the time of his death? If so, *Secondly*, did the portion of Celia McGinnis go to her husband as her administrator?

[1.] It has been said that no case upon a will has a brother, such is the endless diversity of language, employed by persons in the final disposition made of their effects. It would seem, therefore, to be almost a useless toil, to undertake to establish any general principle upon a point that may rarely, if ever, occur again. We shall content ourselves, at any rate for the present, to put such a construction upon this will as is best warranted by the authorities, and that will effectuate the intention of the testator, the first and great object of inquiry with Courts of Justice. In seeking for the intention of the testator, who frequently makes this *post mortem* disposition of his worldly goods, *in extremis*, and by the assistance of physicians and friends who are unskilled in the law, we must not always be restrained by unbending technical rules, but adopt the most liberal construction, regardless alike of the strict definition of words, and the grammatical structure of sentences. *Ferson et al. vs. Dodge et al.* 23 *Pick.* 287. And it is perhaps not going too far, to say, that as a general rule, Courts would carry out the intention of the dead, by putting upon their wills that meaning which obviously occurs to a plain man upon reading or hearing the instrument read.

What was the probable purpose of Robert Foster, so far as these parties are concerned? 1st. To make ample provision for

his wife during her life or widowhood; and to accomplish this, he gives her the whole estate for life, defeasible upon her inter-marriage, which event not happening, the will is to be now inter-preted as though the property was bequeathed to her absolutely, during her natural life. 2dly, We apprehend that the testator designed to make provision, not only for his children, but their posterity. Now it is argued, and with much plausibility, that this estate is *contingent*, at least as to the *marriage*; and that it can-not be *contingent* as to that event and *vested* as to the other, to wit, the *death* of the widow. Without controverting this propo-sition, we respectfully submit that there is no *contingency* here in any event. Perhaps no clause in a will is of more frequent oc-currence than that which devises property during life or widow-hood. And the uniform and established construction is, that the limitation over is *not contingent*, but takes effect at all events upon the determination of her estate, whether by marriage or death. I will cite two or three leading authorities in illustration of this doctrine.

In *Luxford vs. Cheeke*, 3 *Lev.* 125, the testator devised to his wife for life, *if she should not marry again*; that if she married again, then his son H. should presently after his mother's marriage, enjoy the premises, to him and the heirs of his body, with remainder over; the widow died without marrying again, but it was held that the remainder vested and took effect. *Gordon vs. Adolphus,* 3 *Parl. C. Toml. Ed.* 306, was a case of the same kind. The bequest was to the testator's wife, " during her natural life, that is to say, so long as she should continue unmarried, *but in case she shall choose to marry, then, and in that case,*" (almost the iden-tical language of Foster's will,) "it was to be for the immediate use of the testator's daughter; and in case she should die without leaving issue, then, over." And it was considered by Lord Cam-den, and afterwards by the House of Lords, that the bequests over were *not contingent* in the event of the marriage of the wife.

This rule was recognised and adopted by the Court of Appeals in Virginia, in the case of *Hansford vs. Elliott,* 9 *Leigh,* 79. The testator bequeathed the residue of his whole estate, after paying his debts and funeral charges, to his wife for life or during her widowhood; and at her death, the whole of his personal proper--ty to be equally divided among his *surviving* children, named An-na, John, Polly, Thomas, and Robert, and a daughter, Elizabeth,

afterwards born.   After the execution of the will, and before the death of the testator, he had born two other children, Richard and Peter.   The testator died, leaving all of the above named children living.   The widow died without having again married, leaving only two of the children, Elizabeth and Peter living.   All the others had been married and died, leaving children.   Justice *Parker*, in delivering the opinion of the Court, among other things, said : " The bequest is to the children specially named, and I cannot believe the testator meant to make a tontine among them, and if all but one died before the mother, for that one to take all in exclusion of grand children and their descendants.   This would, I believe, in ninety-nine cases out of a hundred, defeat the intention of the testator.   The safest and soundest construction, is, to consider the estate as vesting at the death of the testator, and not to give the whole to such legatee as happens to survive the tenant for life, or, if none survive, to declare a total intestacy."

In the language of the law, in all these cases, the widow takes an estate *durante viduitate*, and the gifts over are vested remainders, absolutely expectant on that event, being to take effect at all events on its determination, and not conditional limitations, dependent on the contingent determination of a prior estate for life.

Again, it is contended that the remainder in *this property* never did vest in the children of the testator, but in the executors, to be by them sold after the death of the widow, and the *proceeds* equally divided among the children of the testator then in life. Suppose it to be true, as is assumed in the argument, that the sale contemplated by the will was to be effected by the executors, and the *proceeds* to be equally divided among the testator's children, would that change the character of the estate ?   Or would it postpone the vesting of the interest of the remainder—men ? We see no good reason to warrant this construction.   To our minds, it is manifest that the testator merely intended by this direction, to point out an equitable mode of dividing his estate ; just such a one as is frequently pursued in cases of intestacy. Our judgment, of course, is necessarily restricted to so much of the *will* as comes before us in the pleadings.   It is to be regretted that the whole of this document was not appended to the bill.   Other parts of it might throw light upon that under consideration.   The conclusion is by no means irresistible, that the

McGinnis *vs.* Foster.

*sale* referred to, was to be executed by the executors.    From the fact that the *life* estate passed out of their hands, the presumption is, that the property continued to be transmitted in the channel marked out in the will.    And consequently that the sale, for the sake of division, would be made by the children themselves, without the intervention of the executors.    The life estate could not vest, except by the assent of the executors, after the debts and funeral expenses were paid.    For what purpose, then, should the remainder return into their hands after the termination of the life estate?

In *Drayton vs. Drayton*, 1 *Desaussure*, 324, the devise was of the real and personal estate to the testator's youngest son John, and if he died under age and without lawful issue, then the estate to be sold, and the money to be equally divided among his four *surviving* sons, William Henry, Charles, Glenn and Thomas. There was a general devise and bequest of all the residue of his estate, real and personal, to the same effect.    The testator died seized, leaving surviving his said five sons and two daughters, Anne and Susannah.    William Henry died leaving two children, John and Mary, as his heirs at law.    Soon after William Henry's death, his brother John died under age, and without lawful issue. The surviving brothers sold the estate devised to John, and refused to allow John and Mary, the children of William Henry, deceased, any part of the proceeds.    Whereupon John, for himself and as the next friend of Mary, his infant sister, brought their Bill in Equity, insisting on their right, and praying that the defendants might be obliged to account to them for one-fourth of the estate.    To this Bill the defendants demurred, on the ground that the complainants were not entitled to any part of the estate, as their father, William Henry, had died before John, his brother, and that consequently the surviving brothers were entitled to the whole.    The Court overruled the demurrer, and the defendants were ordered to answer, on the ground that the survivorship referred to the death of the testator ; and therefore that the devisees surviving at that time, took a vested estate in remainder.

There is a striking family likeness, to say the least of it, in every lineament of this case and the one at bar.    In both an estate is bequeathed in real and personal property ; in the one it is expressly limited to life or widowhood ; in the other to the death of the first taker under age, and without lawful issue ; in both  upon

the termination of the particular estate, the remainder is directed
to be sold, and the money to be equally divided ; in the one, to the
testator's *surviving* children; in the other to his children : in
both, a death intervened pending the particular estate; and in
both a Bill was brought to recover the share that would have been
coming to the deceased child, upon the ground that it was a vest-
ed remainder at the death of the testator.   The South Carolina
Court decided, that notwithstanding the words in the will express-
ly limited the proceeds of the sale to the *surviving* children, that they
referred merely to the futurity of possession, occasioned by the car-
ving out of a prior interest, and as pointing to the determination
of that interest, and not as designed to postpone the vesting.   The
Court below held, that by mere legal intendment, or implication
of law, the words of Robert Foster's will, were creative of a fu-
ture interest; that no estate vested in his children at the death of
their father, but upon a future contingency, and that none took
but those who were in life, ready to receive the proceeds of the
estate in remainder, at the hands of the Executors.

Considering that the Courts never construe a limitation into
an executory devise, where it may take effect as a remainder, be-
cause the former puts the inheritance in abeyance ; and that they
never construe a remainder to be contingent, where it can be
taken for vested, because the latter tends to support the estate,
and the former to destroy it, by putting it in the power of the
particular tenant to defeat the remainder ; and that where a
Will is susceptible of two constructions, the one favorable to ves-
ted and unfavorable to contingent remainders, should be adopted.
5 *Mass.* 535.   2 *Pick.* 468.   And considering further, that a ten-
ancy in common or severally, is more favored by the law, than a
joint tenancy, and that policy requires, that estates be subjected
to certain division and distribution among all the children of the
decedent, rather than risk the possibility of its accumulation in the
hands of one, who might chance to survive all the rest, at the
death of the life tenant ; and moreover recollecting that the law
never encourages an *intestacy*, where there is a Will, as to any
portion of the estate, which would always happen where, upon
the hypothesis  that the estate was suspended till the death of the
tenant for life, all the children die in the meantime, I repeat, that
the clearest and most indubitable evidence of intention will be re-
quired to give the interpretation to this Will, so earnestly pressed

upon us by the counsel for the defendants. And the burden of proof to make out such intention, rests upon them. 6 *East*, 489. Such, we respectfully maintain, they have failed to do. We regret the lack of power, to trace with a clearness which would secure their hearty acquiescence, the attenuated line, which distinguishes vested from contingent remainders, and both from an executory devise.

But is it not unnatural, and altogether unreasonable to suppose that Robert Foster designed, that if all his children except one had died in the life-time of their mother, each leaving children, that the sole survivor should enjoy the entire residue of his estate, to the disinheritance of the family of all the rest? Still there is no middle ground. He meant this, or he meant a present fixed right of future enjoyment in his children upon the ceasing of the intermediate or precedent estate in his wife. At what period did the remainder vest? My brother Elam excuses his earnestness, because "*he represents the interests of a little child;*" meaning the infant orphan of Mrs. McGinnis. His zeal in this noblest of causes, is not only pardonable but praiseworthy; yea, in the highest degree commendable. And yet, if this be a contingent remainder or executory devise, and the children of the testator took nothing till the property was sold by the executors, after the termination of the life estate, Mrs. McGinnis being then dead, it is clear that under the bequest in the will to *children*, her offspring would be excluded. To permit her child to share in the distribution, would be to violate a well established principle, namely, that *grand children* never claim a devise under the description of *children*, where there are *children* in life capable of taking. It is true that the Lords Commissioners, in *Crooke vs. Brookeing*, 2 *Vern.* 106, *Lord Alvanley, in Reeves vs. Bryer*, 4 *Ves.* 698, and in *Royle vs. Hamilton*, *Ibid*, 439, and *Sir William Grant in Radcliffe vs. Buckley*, 10 *Ves.* 198, asserted, or rather assented to the proposition, that a gift to *children* extends to *grand children, where there is no child!* And the same doctrine has been recognised by the Courts in this country. *Erving vs. Handley*, 4 *Litt.* 349. *Drayton vs. Drayton*, 1 *Dessaus.* 327. *Ibid*, 499. But the word *children*, used in a will, will not be construed to mean *grand children*, unless a strong case of intention or necessary implication requires it. *Izard vs. Izard*, 2 *Dessaus.* 303. *Tier vs. Pennell*, 1 *Edw.* 354. *Ibid*, 174. *Moor vs. Raisbeak*, 12 *Sim. V. C.* 123. *Hone vs.*

*Van Shaick*, 3 *Edw.* 474.   *Cutter vs. Doughty*, 23 *Wend.* 522.
*Ruff vs. Rutherford*, 1 *Bail. Eq.* 7.   *Hollowell vs. Phipps*, 2
*Whart.* 376.   *Dickinson vs. Lee*, 4 *Watts*, 82.   *Mowatt vs. Ca-
rew*, 7 *Paige*, 328.   *Phillips vs. Beall*, 9 *Dana*, 1.   *Pemberton vs.
Parker*, 5 *Bin.* 601.   *Smith vs. Case*, 2 *Dessaus.* 123.   But the
relaxation has never gone to the extent of letting in *grand
children*, where there were *children* in life.   On the contrary, the
word *children*, in such cases, has been construed according to its
popular signification, as designating the immediate offspring and
the gift has been confined to them.   The position assumed in the
argument, then, would seem to be suicidal to the interest which
it seeks to sustain.

[2.] Does this interest of Mrs. McGinnis, in the estate of her
father, go to her husband as administrator?   The Legislature of
Georgia, in 1821, passed an act declaring, " that in case of a
*feme covert* dying intestate, the husband may demand and have
administration of her rights and credits and other real and per-
sonal estates, and recover and enjoy the same, without being sub-
ject to distribution."   And its constitutionality being doubted by
reason of its departure from the title of the bill, it was re-enact-
ed, in 1827.   *Dawson's Compil.* 220.   Concede, then, that the
remainder vested in Mrs. McGinnis, upon the death of her fath-
er, and the right of her husband to recover it as her administrator,
is no longer here- an open question.   It is foreclosed by the ex-
press provisions of the statute.   It is equally clear by the Com-
mon Law.   As to the debts due to the wife at the time of her
marriage, or afterwards, by bond, note, or otherwise, and which
are termed *choses in action*, the husband has power to sue for and
recover, or release, or assign the same; and when recovered and
reduced to possession, and not otherwise, it is evidence of a con-
version of the same to his own use, and the money becomes in
most cases, absolutely his own.   *The rule is the same if a legacy
or distributive share accrues to the wife during coverture.   Gar forth
vs. Bradley*, 2 *Ves. Sen.* 675.   *Schuyler vs. Hoyle*, 5 *Johns. Ch.
R.* 196.   *Hairland vs. Bloom*, 6 *Ibid*, 178.   *Carr vs. Taylor*, 10
*Ves.* 578.   *Wildman vs. Wildman*, 9 *Ibid*, 174.   *Parsons vs. Par-
sons*, 9 *N. H. Rep.* 309.   2 *Kent Com.* 135.   Formerly, there was
much debate whether or no, an administrator could be compelled
to make any distribution of the intestate's estate.   For though, (af-
ter the administration was taken in effect from the Ordinary, and

transferred to the relations of the deceased,) the spiritual Court endeavored to compel a distribution, and took bond of the administrator for that purpose, they were prohibited by the temporal Courts and the bonds declared void at law. 1 *Lev.* 233. *Carth.* 125. 2 *P. Wms.* 447. And the right of the husband, not only to administer, but also to enjoy exclusively the effects of his deceased wife, depends still on this doctrine of the Common Law; the Statute of Frauds declaring only that the Statute of Distributions does not extend to this case, but leaves the estates of *feme coverts* as at Common Law; and the right of the husband at Common Law, was not only to administer, but to enjoy exclusively the rights, both real and personal, of his deceased wife. 2 *Blacks. Com.* 515, 516. *Hoskins vs. Miller,* 2 *Dev. N. C. Rep.* 360.

The judgment of the Court below, upon the demurrer, must, therefore, be reversed, and the bill reinstated.