S96A0477. LEMMONS et al. v. LAWSON et al.
(468 SE2d 749)

HUNSTEIN, Justice.

This case involves the construction of the wills of Dewey Bowen and his wife, Ruth Bowen. Dewey, who died in March 1980, left a will which created a trust comprising about one-half of his estate. Ruth Bowen received a life interest in the trust. Item VI (c) of Dewey's will provided:

> Upon the death of my wife, the Trustee shall pay all of the remaining assets in this Trust or otherwise of the estate in equal shares to my sisters-in-law, namely [Maybelle Lawson, Kate Hipkins, and Lois Maynard]. In the event that [Maybelle or Kate] is not in life, then it is my will and desire that their share be added to the share of any surviving sister-in-law. In the event that [Lois] is not in life, it is my desire that her share shall go to my sister, [Nelle Newton] and her two daughters [Dorothy Garrett and Nelle Roots], all on a share and share alike basis per capita.

Lemmons, the Bowen family attorney, and Webb, a neighbor, were named co-trustees.

Ruth Bowen, Dewey's widow, died in October 1991. Of the three sisters-in-law named in Dewey's trust, only Maybelle Lawson was alive at Ruth's death. Ruth left a will which in Item VI contained an "equalization clause" (combining her own assets with those of Dewey's trust, so that the distribution of their combined assets would follow, as equally as possible, the distribution scheme of Dewey's trust). Ruth's will divided her estate into "shares" and left one share

each to four groups. Three groups consisted of the three sisters-in-law (or their heirs) named in the trust; the fourth group consisted of another sister-in-law who had not been named in Dewey's trust. Lemmons, Webb, and Maybelle Lawson were named as co-executors under Ruth's will. The pertinent language in Item VI of Ruth's will is as follows:

> A share is to be an amount from my estate, that when combined with the bequests to any of the above four groups from my husband's estate and trust, that these four groups will be as nearly as possible on equal share and share alike basis. It is my desire to have the assets from my estate allocated in such a way that, when the bequests from my husband's trust and the bequests under this section of my Will are combined, that the above four groups that I have named, or their heirs as hereinafter named, will be as nearly as possible bequeathed an equal amount. I am aware that there is a possibility with changes in values of assets, and various events such as deaths of some of the parties, that an entirely equal distribution (when combined) may not be achieved.

Upon a dispute arising as to when the trust vested (upon Dewey's death or upon Ruth's death), Lemmons and Webb (hereinafter "appellants") filed a petition for interpretation of wills, naming Maybelle Lawson and others, including Dewey's sister, Nelle Newton, and Newton's daughters (hereinafter "Newton") as respondents. The trial court granted summary judgment to Newton finding, in its interpretation of Item VI of Dewey's will, that the trust vested at the death of Ruth. Hence, the trial court awarded Lois Maynard's share of Dewey's trust to Newton and awarded Kate Hipkins' share in the trust to Maybelle Lawson. The trial court then held that although Ruth's will intended that the parties receive an equal amount under Dewey's trust and her will, Ruth also intended that Lawson take something under her will. The trial court decided that Lawson was to take at least a de minimis one-eighth of a share under Ruth's will. The trial court disallowed an award of attorney fees and expenses charged by appellants against Ruth's estate except on those issues arising out of the equalization clause. We affirm the trial court's ruling that Dewey's trust vested as of the date of the death of Ruth Bowen and its disallowance of attorney fees, but we reverse the trial court's award of a one-eighth share under Ruth's will to Lawson.

1. We find no error in the trial court's construction of the words of survivorship in Dewey's will. In construing a will the court is required to examine it as a whole and to search diligently for the intention of the testator as the same may be revealed therein. OCGA § 53-

2-91. "This search for the intention of the testator should be made by two methods: (1) by looking to the will as a whole, and (2) by scrutinizing every phrase that it contains. [Cit.]" *Patterson v. Patterson,* 208 Ga. 17 (1) (64 SE2d 585) (1951).

While, as stated in OCGA § 44-6-66, the law favors the vesting of remainders in all cases of doubt, the statute further provides that in construing wills, words of survivorship shall refer to the death of the testator in order to vest remainders "unless a manifest intention to the contrary shall appear." Id. In the present case, it is manifest that the words of survivorship of the sisters-in-law have reference to the death of Ruth Bowen and not the death of the testator. The testator began Item VI (c) with the phrase "[u]pon the death of my wife" in the first sentence and continued in the following sentences by awarding the remaining trust assets to his sisters-in-law with the direction that "in the event that [a certain sister-in-law] is not in life" that sister-in-law's share would be directed elsewhere. This sequence of directions indicates that the testator contemplated the remaindermen survive the testator's wife in order to receive an interest. See *Ruth v. First Nat. Bank,* 230 Ga. 490 (197 SE2d 699) (1973). See also *Dunn v. Sanders,* 243 Ga. 684 (256 SE2d 366) (1979); *Trust Co. Bank v. Heyward,* 240 Ga. 557 (1) (242 SE2d 257) (1978); Pindar, Ga. Real Estate Law and Procedure, Vol. 1, § 7-60 (4th ed.).

Appellants cite numerous cases to support their claim that a contrary interpretation is required. However, precedents

> "are of but little authority, and of dangerous application, in deciding upon the intention of the testator; the construction depends so much on each case, upon the character of the testator, the terms he employs, and all the surrounding circumstances." [Cits.]

*Gilmore v. Gilmore,* 197 Ga. 303, 309 (29 SE2d 74) (1944). A careful review of the cases cited by appellants reveals that they are all distinguishable.[1]

Therefore, because the trial court's interpretation properly gives effect to the intention of the testator as demonstrated by the language in the will, see OCGA § 53-2-91, this enumeration presents no ground for reversal.

2. We agree with appellants that the trial court erred in conclud-

---

[1] Appellants rely on cases following *McGinnis v. Foster,* 4 Ga. 377 (1848), such as *Crossley v. Leslie,* 130 Ga. 782 (5) (61 SE 851) (1908); *Gay v. Graham,* 218 Ga. 745 (130 SE2d 591) (1963); and *Witcher v. Witcher,* 231 Ga. 49 (200 SE2d 110) (1973), all of which find that there was no language in their respective wills that manifested an intent by the testator that remaindermen survive anyone other than the testator.

ing that there was a lack of clarity in the equalization clause in Ruth's will which required the court to devise a formula so as to enable Maybelle Lawson to receive a minimum one-eighth share from Ruth's estate. There is nothing in Ruth's will that suggests such a conclusion; rather, the language in the equalization clause indicates that its purpose was to avoid the possibility of any one person, including Lawson, receiving more than the other beneficiaries.

3. We find no abuse of the trial court's discretion in disallowing appellants' charges against the estate for the expenses of the litigation and attorney fees as to those issues relating to the vesting of the remaindermen.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED APRIL 15, 1996.

*Linda N. Pruett,* for appellants.
*Louis Levenson,* for appellees.