S98A1615. SWANSON v. SWANSON et al.
(514 SE2d 822)

FLETCHER, Presiding Justice.

The issue in this appeal is whether Laura C. "Peggy" Swanson inherits from her deceased husband Bennie Swanson the remainder

---

interests he had in trusts created by his father. Because Bennie Swanson's remainder interests vested before his death and conditions subsequent contained in the trust provisions did not occur before the life beneficiary of the trusts died, Bennie's vested remainder was not defeased and instead passed according to the terms of his will. Therefore, we reverse.

When George Swanson died testate in 1970 he was survived by his wife Gertrude Swanson and his nine children. George's will created two trusts in which Gertrude had a life estate with the remainder left to the nine children, who were all named in the will. Bennie Swanson was one of these children. Bennie died testate prior to Gertrude. He had no children, but was survived by his wife Peggy Swanson, who is the sole beneficiary under his will. After Gertrude's death, Peggy Swanson and other relatives of George and Gertrude brought this action seeking a declaration of their rights under the trusts. The trial court granted summary judgment against Peggy on her claim that she was entitled to Bennie's remainder interests in the trusts. Peggy appeals and six of George and Gertrude's children are appellees.

1. To distinguish between vested remainders and contingent remainders, a court must determine whether at the time the instrument takes effect there is "a person who in his own right, or as a part of his estate, would take all of this property if [the life estate] ended now."[1] If there is such a person, then the remainder is vested subject to partial or complete defeasance.[2] If no such person is identifiable, then the remainder is subject to a condition precedent and is a contingent remainder.[3] In determining the type of remainder created, Georgia has consistently followed two common law principles: (a) the law favors construing "conditions to be subsequent"[4] and (b) the law favors the "vesting of remainders in all cases of doubt," which is also called the "early vesting" of remainders.[5] Professor Chaffin has noted that "[a]lthough it is possible to create nondescendible defeasible remainders by using very clear conditions of survivorship by way of condition subsequent, it is difficult to do so in view of the preference

---

[1] Richard R. Powell, *Powell on Real Property*, § 20.04 [2] (1998); Restatement of the Law of Property (1936) § 157, comment on clause (c); see also OCGA § 44-6-61.

[2] *Powell on Real Property* at § 20.04 [2]. Vested remainders may also be indefeasibly vested. A different analysis applies in determining whether a remainder is indefeasibly vested. Remainders subject to partial defeasance are also referred to as vested subject to open. See Restatement of the Law of Property (1936) § 157; William H. Agnor, *Future Interests: The Law in Georgia*, § 1.5 (1979); *Padgett v. Hatton*, 200 Ga. 209 (4), 210 (36 SE2d 664) (1946) .

[3] Id.

[4] OCGA § 44-6-41.

[5] OCGA § 44-6-66; Verner F. Chaffin, *Studies in the Georgia Law of Decedents' Estates and Future Interests*, 369 (1978).

for defeasibly vested rather than contingent interests."[6]

## THE ITEM IV TRUST

2. The Item IV trust provided that,

> [t]he corpus of this trust shall be disposed of according to the directions of my wife, Gertrude Swanson, either given by her appointment during her lifetime or by will upon her death. If she fails to make such disposition, then and in that event, the corpus of this trust, upon her death, shall pass to my nine children, hereinabove named, to be divided among them in equal shares, share and share alike. If any of my children should not be in life at the time of death of my said wife, the share of such deceased child shall go to his or her surviving children, per stirpes.

Following George's death, there were immediately identifiable persons who would take if the life estate ended: George's nine children. Therefore, each child had a vested remainder interest.[7] Additionally, there were two conditions subsequent attached to the vested remainder. These conditions, which could bring about total defeasance of the vested remainder, were: (1) Gertrude's exercise of her power of appointment;[8] and (2) a child predeceasing Gertrude, but leaving children who survived Gertrude.[9] Neither of these conditions occurred prior to the termination of Gertrude's life estate.[10] She did not exercise her power of appointment and although Bennie died before Gertrude, he left no children who survived Gertrude. Furthermore, the Swanson trusts contain no "very clear conditions of survivorship,"[11] and, therefore, Bennie's interest remained fully vested and passed under his will.[12]

---

[6] Chaffin, *Studies in Georgia Law* at 369.

[7] All of the parties agreed that these trusts created a vested remainder in Bennie Swanson.

[8] Exercise of a power of appointment is viewed as operating as a condition subsequent on the remainder in default of appointment. See *Powell on Real Property*, at § 20.04 [5].

[9] Whether this condition or the condition in the Item V Trust required the child of a remainder beneficiary to survive the life tenant is not an issue in this case as Bennie had no children surviving him.

[10] Compare *Lemmons v. Lawson*, 266 Ga. 571 (468 SE2d 749) (1996). We improperly construed the will in *Lemmons* to create a contingent remainder. In fact, it created a vested remainder by naming the sisters-in-law expressly with no condition of survivorship. The will did, however, impose a condition subsequent, which occurred because two of the sisters-in-law did not survive the life beneficiary. Thus, the Court reached the correct result.

[11] See Chaffin, *Studies in Georgia Law* at 369 (can create nondescendible defeasible remainders by using very clear conditions of survivorship).

[12] See OCGA § 44-6-63 (a); *Armstrong v. Merts*, 202 Ga. 483, 492 (43 SE2d 512) (1947) (share of vested remainderman who dies before life tenant passes to his heirs at law or lega-

Holding these remainders to be vested and not defeased by the occurrence of a condition subsequent is consistent with our prior decisions. In *Witcher v. Witcher*,[13] the testator devised a life estate to his wife with "remainder over to my children, share and share alike" and "[i]n the event either of my children should predecease me or my wife, then it is my will . . . the child or children of such deceased child take the share that would have gone to his or her parent, per stirpes." The testator was survived by his wife and four sons. One of the sons predeceased his mother and left no children, but his wife survived him. Finding that the condition subsequent did not occur, this Court held that the son's vested remainder passed by inheritance to his widow.

Similarly, in *Fields v. Lewis*,[14] the grantor conveyed a life estate to his wife with remainder over "to such child or children or representatives of child or children as above mentioned or that she may bring forth by the said [grantor] and leaves in life." One child, who was living when the deed was executed, died intestate without children prior to the termination of the life estate. Thus, the sole condition that could cause a defeasance, dying before the life tenant and leaving a child who survived the life tenant, did not occur. Therefore, we held that the vested remainder was not divested and passed to the child's surviving spouse and sole heir.

The plain language of the Item IV trust, which follows the language of *Witcher* and *Fields*, evidences the testator's intent that the remainder be shared by nine families.

## THE ITEM V TRUST

3. The Item V trust provided that "the remaining assets of this trust shall be divided into nine equal shares, one share for each of my surviving children or for the then surviving issue of each deceased child of ours." As with the Item IV trust, there were immediately identifiable persons who would take if the life estate ended: the surviving children. OCGA § 44-6-66 directs that we construe words of survivorship to refer to the death of the testator in order to vest remainders. Although *Lemmons v. Lawson*[15] construed similar language to create a condition of surviving the life beneficiary, we now

tees as the case may be).

[13] 231 Ga. 49 (200 SE2d 110) (1973).

[14] 118 Ga. 573 (45 SE 437) (1903); See also *Crossley v. Leslie*, 130 Ga. 782 (61 SE 851) (1908) (will devising life estate in land to wife providing "after her death to be sold, and the proceeds to be equally divided between my surviving children and the children of any of my deceased children" construed to create vested remainder in child who survived testator but predeceased life tenant).

[15] 266 Ga. 571 (468 SE2d 749) (1996).

recognize its rationale to be flawed[16] and therefore, it is no longer persuasive. In light of the strong preference in this state for construing conditions as subsequent, we will not construe the mere adjective "surviving" as a condition precedent.[17]

There was one condition subsequent attached that could have caused a total defeasement of the vested remainder in each of George's children: the child predeceasing Gertrude, but leaving children who survived Gertrude. Although Bennie died prior to Gertrude, he had no children and, therefore, just as with the Item IV Trust, Bennie's vested remainder was not defeased and his one-ninth interest flowed into his estate.

In conclusion, we hold that Bennie Swanson's one-ninth interest in the trusts passes to his wife, his sole heir and beneficiary under his will because (1) his remainder was vested; (2) no condition subsequent occurred prior to the termination of the life estate; (3) there is no language in the will that plainly manifests a contrary intent; and (4) this construction is supported by case law and the applicable common law principles.

*Judgment reversed. All the Justices concur, except Benham, C. J., Sears and Hines, JJ., who dissent.*

SEARS, Justice, dissenting.

I disagree with the majority's conclusion that the appellant, Peggy Swanson, is entitled to the remainder interests of Bennie Swanson, her deceased husband, in the two trusts created by Bennie's father. Even assuming Bennie had a vested interest in the trusts, I conclude that the trusts contained a condition subsequent that required Bennie to survive the life tenant to maintain his right to the property. Because he did not do so, he was divested of any interest he had in the property, and Peggy therefore has no interests in the trusts. For these reasons, I respectfully dissent.

1. Bennie's father's will established an "Item IV Trust" and an "Item V Trust," both of which established Gertrude Swanson, Bennie's mother, as the life beneficiary of the corpus of the trusts. The Item IV Trust gave Gertrude Swanson a power to dispose of the property either during her life or by will at her death, and provided that, if she failed

> to make such disposition, then and in that event, the corpus of this trust, upon her death, shall pass to my nine children,

---

[16] See note 10, supra.

[17] Compare *Lamb v. NationsBank*, 270 Ga. 388 (507 SE2d 457) (1998) (remainder "upon the death of [the life beneficiary]" to *"then"* living" nieces and nephews imposed condition that remainder beneficiary survive life beneficiary).

hereinabove named, to be divided among them in equal shares, share and share alike. If any of my children should not be in life at the time of death of my said wife, the share of such deceased child shall go to his or her surviving children, per stirpes.

The Item V Trust provided that upon the death of Gertrude Swanson, the "remaining assets of this trust shall be divided into nine equal shares, one share for each of my surviving children or for the then surviving issue of each deceased child of ours, if any, per stirpes." Item V also provided that the corpus "shall be paid over" to the beneficiaries free of the trust.

Item VII of the Trust provides that, upon the sale of property contained in the Item V trust following its termination, it is the testator's "intention that any of my heirs shall have the right and privilege to purchase and retain any of my property they so desire *to the exclusion of a stranger to my estate.*"[18]

Item VIII provides that if any of the children die before receiving the corpus of the share allocated to him or her, then such share shall be held for the benefit of his or her surviving children until they reach the age of 21, "at which time his or her share shall be transferred and paid over to him or her."

2. Although the law in Georgia favors the vesting of remainders in cases of doubt, and favors conditions subsequent to conditions precedent, the crucial question in determining the descendiblity of future interests is whether the will or trust requires that the devisee survive to the time of distribution to maintain his interests in the property.[19] Moreover, "[i]n construing a will the court is required to examine it as a whole and to search diligently for the intention of the testator as the same may be revealed."[20] In addition, although OCGA § 44-6-66 provides that words of survivorship shall refer to the death of the testator in order to vest remainders, it also provides that this construction is unnecessary if a "manifest intent to the contrary appears."

Moreover, although this State has a preference for early vesting and for construing conditions to be subsequent, I believe that the majority in this case adheres to these principles to the detriment of the overriding principle of ascertaining the testator's intent. In fact, Professor Chaffin, on whom the majority relies, has stated that "[t]he

---

[18] Emphasis supplied.

[19] See Chaffin, *Studies in the Georgia Law of Decedents' Estates and Future Interests*, Chapter 6, *Descendible Future Interests in Georgia: The Effect of the Preference for Early Vesting*, p. 333 (1978); *Lamb v. NationsBank*, 270 Ga. 388, 389 (507 SE2d 457) (1998).

[20] *Lemmons v. Lawson*, 266 Ga. 571, 572 (1) (468 SE2d 749) (1996).

Georgia Courts have carried the application of [the foregoing principles] to extreme lengths, producing a line of decisions which reach results that could not be anticipated and were perhaps unintended by the donor,"[21] and that these rules have "little, if any, justification in modern law."[22] Chaffin also notes that the rules followed by the majority in this case have several undesirable effects, including defeating the testator's intent to have the interest remain in his blood line.[23] Chaffin contends that the tendency to blindly follow the foregoing rules leads courts "to treat as mere surplusage language which might require the interest holder to survive to the period of distribution."[24]

3. In determining the testator's intent in this case, it is important to view the will as a whole. Thus, although this case deals with the interest of a child, as opposed to the interest of a grandchild, it is appropriate to review the whole testamentary scheme, including dispositions to grandchildren, in order to determine the testator's intent.

I turn first to the Item IV Trust. Our decision in *Lemmons*, authored by Justice Hunstein, is illustrative of the proper construction to give this trust. In *Lemmons*, the relevant part of the will provided that "upon the death of my wife [the life beneficiary]," the estate was to pass to the testator's three sisters-in-law. The will then provided that in the event that one or more of the sisters-in-law were not in life, their shares would go elsewhere. We held that "the phrase 'upon the death of my wife,' " combined with the direction that " 'in the event that [a certain sister-in-law] is not in life,' " her share would be directed elsewhere, indicated that the testator "contemplated that the remaindermen survive the testator's wife in order to receive an interest."[25] We also specifically concluded in *Lemmons* that *Witcher v. Witcher*,[26] on which the majority relies in this case, was distinguishable from *Lemmons* and not controlling.

In the present case, the Item IV Trust contains an identical testamentary pattern as that in *Lemmons*, and I conclude that it demonstrates the same testamentary intent as that found in *Lemmons*. The majority, however, concludes that *Lemmons* is not controlling in this case, because we erroneously construed the remainder in *Lemmons* to be contingent instead of vested. The majority, however, concludes that we reached the right result in *Lemmons* because the will

---

[21] Chaffin at p. 331.
[22] Id. at 332.
[23] Id. at 345.
[24] Id. at 341.
[25] *Lemmons*, 266 Ga. at 573 (brackets in original).
[26] 231 Ga. 49 (200 SE2d 110) (1973).

contained a condition subsequent that the sisters-in-law survive the life tenant.[27] However, whether the remainderman's interest in *Lemmons* is classified as a contingent remainder or as a vested remainder subject to the condition subsequent that the remainderman survive the life tenant is of little consequence. What is more, because the language of the trust in *Lemmons* and the language of the trusts in this case are identical for all relevant purposes, I must conclude that if the trust in *Lemmons* created a condition subsequent, then the trusts in this case create the same condition. In this regard, both the trust in *Lemmons* and the two trusts in this case provide that upon the death of the life tenant, the trust assets will pass to the named remaindermen. Further, the trusts in both cases provide that if the remaindermen do not survive the life tenant, then the property will pass to a substitute beneficiary. Thus, if *Lemmons* contained a condition of survivorship as a condition subsequent, the present case does also.

4. As for the Item V Trust, I also conclude that it expresses an intent that the remaindermen survive to the time of distribution. It provides that upon the death of the testator's wife, the corpus shall be paid to his "surviving children" or to the "then surviving issue of each deceased child." Item V then provides that the corpus "shall be paid over" to the foregoing named beneficiaries. The use of the phrases "surviving children" and "then surviving issue of each deceased child" indicates both that the testator desired that the beneficiaries survive the testator's wife[28] and that "his property pass within [his] bloodline" rather than be "diverted to others."[29] Moreover, the fact that the testator also provided that the corpus should be "paid over" to the beneficiaries indicates that the testator contemplated that the beneficiaries would be living at the time of the distribution.[30] For these reasons, I conclude that the language of the Item V Trust indicates the testator's intent to impose a condition of survivorship.

5. My conclusion that the language of the two trusts imposes a condition of survivorship is further supported by viewing the will as a whole. For example, Item VII of the will provides that at the termination of the Item V Trust, any of the testator's heirs shall have the right to purchase any of the assets of the trust that they may desire. That provision specifically provides that it is the testator's intention that his heirs have the right to retain the trust property "to the exclusion of a stranger to my estate." Moreover, by beginning Item

---

[27] Majority opinion at 735, n. 10.
[28] *Lamb*, 270 Ga. at 389-390; *Lemmons*, 266 Ga. at 573.
[29] *Lamb*, 270 Ga. at 391.
[30] *Lamb*, 270 Ga. at 390.

VIII of the will with the phrase, "[s]hould either of my children die before receiving the corpus of the share allocated to him or her," and by providing in Item VIII that a "surviving" grandchild must live to age 21 for his or her share of trust assets to be "transferred and paid over" to him or her, the testator imposes a condition of survivorship on the grandchildren, and evidences a scheme to control the disposition of trust assets for the benefit of those persons close to him.[31]

For these reasons, I conclude that both the Item IV and V Trusts provide that a vested remainderman's interest may be divested by the condition subsequent of failing to survive the life tenant. Because Bennie Swanson did not survive his mother, I conclude that his wife is not entitled to a share of the trusts in question. Accordingly, I respectfully dissent.

I am authorized to state that Chief Justice Benham and Justice Hines join in this dissent.

DECIDED MARCH 19, 1999 —
RECONSIDERATION DENIED APRIL 1, 1999.

*Shaw, Maddox, Graham, Monk & Bolin, John M. Graham III, Mather D. Graham, Bandy & Stagg, Marshall M. Bandy, Jr.,* for appellant.

*Shumaker & Thompson, Everett L. Hixson, Jr., Jane M. Stahl,* for appellees.